## S08G1975. JOHNSON v. THE STATE.
(679 SE2d 340)

SEARS, Chief Justice.

We granted certiorari in this case to consider whether the Court of Appeals erred in holding that an officer's entry into Johnson's hotel room was lawful so that he could seize contraband found therein.[1] For the reasons that follow, we affirm in part and reverse in part.

On March 30, 2005, Johnson was renting a room at a hotel in Lavonia, Georgia. Hotel guests complained to the manager that illegal activity was occurring in Johnson's room and that a large number of people were coming and going from the room. The guests also expressed concern for their safety. The manager of the hotel contacted the Lavonia Police Department, and it dispatched two officers to the hotel. At trial, when an officer was asked whether he had observed activity in the room, he testified that he had and that he spoke with two men in the parking lot who told them they were there to purchase marijuana. The officer told the hotel manager that he had discovered Johnson was selling drugs out of the room, and the manager asked the officer to assist a hotel clerk in evicting Johnson.

Pursuant to hotel protocols, the clerk was required to call the

---

[1] *Johnson v. State*, 292 Ga. App. 752 (665 SE2d 431) (2008).

room first and attempt to contact Johnson. If she could not contact him by phone, she was required to go to the room and knock on the door to see if he would answer the door and speak to her. If no contact could be made, she was required to open the door and determine whether anyone was in the room. If no one was there, she was required to lock the door with an "inhibit key" that would preclude further entry to the room.

Here, the clerk attempted to contact Johnson by phone but no one answered. She then went to the room with the officers. They smelled a strong odor of marijuana outside the room. The clerk knocked on the door several times, but there was no response. The clerk unlocked the door, but asked the officers to open the door because she was frightened. When the door was opened, the officers saw two pipes commonly used to smoke marijuana. The officers announced their presence, and received no answer. The officers then entered the room to notify anyone who was there that they had to leave. One officer saw a baggie filled with what appeared to be marijuana in plain sight on a table between the beds. One of the officers also checked under the bed to make sure no one was hiding there and saw another large baggie filled with marijuana. When the officers entered the room, they noticed that the bathroom door was closed. As one of the officers was walking to the bathroom to open the door to determine if anyone was hiding there, he saw a camouflage jacket hanging outside the bathroom door. The jacket had a large bulge in a pocket on the upper sleeve area, and the officer worried that it might be a weapon. Before opening the bathroom door, he felt the bulge. Because it felt like a baggie filled with marijuana, similar to the type they had already found, he took the baggie out of the pocket.

Johnson moved to suppress the evidence of the marijuana, but the trial court denied the motion. Johnson appealed, and the Court of Appeals affirmed as to the pipes and baggie in plain sight, reasoning that the officers were lawfully authorized to enter the hotel room to ensure the safety of the hotel clerk and thus could seize contraband in plain view.[2] The Court, however, reversed as to the marijuana found in the jacket pocket and under the bed on the ground it was not in plain view.[3] We affirm the Court of Appeals in part and reverse it in part, concluding, among other things, that Johnson lost his expectation of privacy in the hotel room when he was properly evicted due to inappropriate activities in the room.

In a case similar to the present one, the court in *United States v.*

---

[2] Id. at 753-754.
[3] Id.

*Molsbarger* concluded that Molsbarger, a hotel guest, had lost his expectation of privacy in his room when he was properly evicted.[4] There, a hotel manager called the police after he received complaints about loud partying in the room and after he observed numerous people entering and exiting the room, making him believe that illegal drug activity was occurring. The manager told the police he wanted them to help him evict the occupants of the room. The officers knocked on the door but were told by a woman who answered that she could not let them in because it was not her room. The officers nevertheless went into the room, found methamphetamine in a nightstand and in a box, and arrested Molsbarger. Molsbarger sought to suppress the evidence, contending that the search of the room violated his Fourth Amendment rights. The Eighth Circuit acknowledged a hotel guest has a reasonable expectation of privacy in his room if certain factors are present,[5] but ruled that "a justifiable eviction terminates a hotel occupant's reasonable expectation of privacy in the room."[6] "This rule is consistent with the Fourth Amendment's goal of protecting the sanctity of private behavior. Disruptive, unauthorized conduct in a hotel room invites intervention from management and termination of the rental agreement."[7] On the other hand, if a hotel manager's termination of a guest's rental agreement were wrongful, the guest would not have lost his expectation of privacy in the room.

Under the facts in *Molsbarger*, the court concluded Molsbarger had no reasonable expectation of privacy in the room once the hotel manager properly decided to evict him:

> Molsbarger and the other occupants of the room were creating a public disturbance that prompted several complaints from other hotel occupants about the noise level in the room. Notwithstanding the manager's warning that they quiet down, the occupants of Room 101 continued their raucous behavior. When the police arrived, the manager confirmed that he wanted the occupants evicted. The police justifiably entered the room to assist the manager in expelling the individuals in an orderly fashion. Any right Molsbarger had to be free of government intrusion into the

---

[4] 551 F3d 809 (8th Cir. 2009), cert. denied, ___ U. S. ___ (129 SC 2168, 173 LE2d 1164) (2009).

[5] These include whether the guest properly checked into and paid for the room. Id. at 811.

[6] Id. at 811. Accord *United States v. Banks*, 262 Fed. Appx. 900, 905 (10th Cir. 2008), cert. denied ___ U. S. ___ (128 SC 2890, 171 LE2d 825) (2008); *Young v. Harrison*, 284 F3d 863, 869 (8th Cir. 2002); *United States v. Rambo*, 789 F2d 1289, 1295-1296 (8th Cir. 1986). See also *United States v. Croft*, 429 F2d 884, 887 (10th Cir. 1970) (when hotel rental period ends, guest loses right of privacy associated with room).

[7] *Molsbarger*, 551 F3d at 811.

574

room ended when the hotel manager, properly exercising his authority, decided to evict the unruly guests and asked the police to help him do so.[8]

Similarly, in *Young v. Harrison*, the court concluded that the hotel manager had the authority to summarily evict Young from his room for disturbing other guests; that when the manager decided to terminate Young's occupancy, control over the room reverted to the management; that Young lost his expectation of privacy in the room; and that the police officers who entered the room to eject Young did not violate Young's Fourth Amendment rights.[9] The court rejected Young's contention that he should be treated like an apartment tenant, noting that courts "draw a distinction between a tenant and a hotel guest by reasoning that the tenant acquires an interest in the real estate and has the exclusive possession of the leased premises, whereas the guest acquires no estate and has mere use without the actual or exclusive possession."[10]

In the present case, the hotel manager had the authority to terminate Johnson's rental agreement without prior notice.[11] Before the officers went to Johnson's room, the hotel manager had exercised this authority and justifiably terminated Johnson's occupancy of the room on the ground he was selling drugs from the room and creating a disturbance at the hotel. Thus, Johnson no longer had a reasonable expectation of privacy in the room.[12] Moreover, the officers had to determine if anyone was in the room before the hotel clerk could lock the door with the "inhibit key" and effectuate the eviction. The officers thus properly entered the room and searched in places where someone could be hiding. Accordingly, the officers properly seized the marijuana on the table, which was in plain view, as well as the marijuana located under the bed.

The marijuana found in the pat-down of the coat pocket is more problematic. Johnson's loss of the expectation of privacy in the room does not mean that he had lost his expectation of privacy with regard to personal items in the room.[13] We conclude, however, that the marijuana was properly seized from the coat pocket. The jacket was

---

[8] Id. at 811-812. Accord *Banks*, 262 Fed. Appx. at 905; *Rambo*, 789 F2d at 1295-1296; *Young*, 284 F3d at 869.

[9] *Young*, 284 F3d at 868-869.

[10] Id. at 868.

[11] See OCGA § 43-21-3.1 (b), which provides that a hotel need not provide notice of a "termination of occupancy for cause, such as failure to pay sums due, failure to abide by rules of occupancy, failure to have or maintain reservations, or other action by a guest."

[12] We express no opinion regarding a hotel guest's expectation of privacy if the guest has a long-term occupancy and is, in effect, living in the hotel. Here, Johnson had checked into the room on March 28 and was scheduled to check out on April 4.

[13] See 1 LaFave, Search & Seizure, § 2.3 (a) at p. 563 (4th ed. 2004).

hanging just outside the bathroom door, and the officer who needed to enter the closed bathroom was justifiably concerned for his safety and was worried whether the bulge in the jacket was a gun. We conclude that the officer was permitted, under these circumstances, to take reasonable steps to ensure his safety and that conducting a pat-down of the jacket pocket was a reasonable step.[14] In addition, when the officer felt the object in the pocket, he recognized it as a baggie filled with marijuana. Based on this recognition, he was authorized to seize the baggie.[15]

For the foregoing reasons, we affirm the Court of Appeals' holding that the seizure of the pipes and the baggie on the table was proper. On the other hand, we reverse the Court of Appeals' holding that the marijuana found under the bed and in the coat pocket were seized illegally.

*Judgment affirmed in part and reversed in part. All the Justices concur.*

DECIDED JUNE 1, 2009 —
RECONSIDERATION DENIED JUNE 29, 2009.

*Sean A. Black*, for appellant.
*Robert W. Lavender, District Attorney, Adam C. Schroeder, Assistant District Attorney*, for appellee.

---

[14] *Mohamed v. State*, 276 Ga. 706, 710 (583 SE2d 9) (2003).
[15] See *Minnesota v. Dickerson*, 508 U. S. 366, 375-376 (113 SC 2130, 124 LE2d 334) (1993); *Hicks v. State*, 293 Ga. App. 745, 746-747 (667 SE2d 715) (2008); *Mason v. State*, 285 Ga. App. 596, 597 (647 SE2d 308) (2007); *United States v. Bustos-Torres*, 396 F3d 935, 943-944 (8th Cir. 2005) (under "plain feel" doctrine, if officer conducting pat-down search feels something he recognizes as contraband, its warrantless seizure is justified).