## COMMONWEALTH *vs.* MARK MOLINA.

Suffolk. February 7, 2011. - June 1, 2011.

Present: IRELAND, C.J., SPINA, COWIN, CORDY, BOTSFORD, GANTS, & DUFFLY, JJ.[1]

*Controlled Substances. Firearms. Practice, Criminal,* Motion to suppress. *Search and Seizure,* Hotel room, Expectation of privacy. *Constitutional Law,* Search and seizure, Privacy. *Privacy.*

A Superior Court judge properly denied a criminal defendant's pretrial motion to suppress evidence discovered by police during a warrantless search of a hotel room, as well as statements the defendant later made to police and evidence discovered during subsequent searches pursuant to warrants, where the hotel manager, for legitimate and lawful grounds (i.e., a reasonable belief that the defendant had violated the hotel's rules and regulations as well as State law concerning controlled substances), and pursuant to the hotel's policy permitting eviction without notice where a guest failed to comply with the hotel's rules and regulations as well as local, State, and Federal laws, evicted the defendant by physically preventing the defendant's re-entry into the hotel room he had paid for, and thereby terminated the defendant's occupancy rights and privacy interest in the room and its contents; therefore, the subsequent police search, which was undertaken with the hotel manager's consent, was, in the circumstances, constitutional. [824-829] BOTSFORD, J., dissenting, with whom DUFFLY, J., joined.

INDICTMENTS found and returned in the Superior Court Department on April 24, 2006.

A pretrial motion to suppress evidence was heard by *Charles J. Hely*, J., and the cases were heard by *Janet L. Sanders*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*John J. McGlone, III (Jacqueline M. Burchill* with him) for the defendant.

*Zachary Hillman*, Assistant District Attorney, for the Commonwealth.

IRELAND, C.J. After a jury-waived trial, the defendant, Mark

---

[1]Justice Cowin participated in the deliberation on this case prior to her retirement.

Molina, was found guilty of trafficking in a class B controlled substance (cocaine), G. L. c. 94C, § 32E (*b*) (1); possession of a class C controlled substance (mescaline) with intent to distribute, G. L. c. 94C, § 32; two charges of possession of a class D controlled substance (marijuana) with intent to distribute, G. L. c. 94C, § 32; possession of a firearm without a license, G. L. c. 269, § 10 (*a*); and possession of ammunition without a firearm identification card, G. L. c. 269, § 10 (*h*).[2],[3] The defendant appeals from his convictions, contending that his pretrial motion to suppress evidence and statements was improperly denied.[4] In his motion, the defendant argued that, under the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights,[5] the warrantless search of his hotel room was unlawful, which thereby invalidated statements he later made to police as well as subsequent searches made by police pursuant to warrants. We transferred the case here on our motion. We conclude that because the hotel manager lawfully evicted the defendant from his room, the defendant did not have a reasonable expectation of privacy in the room at the time of the police search and the search therefore was not unlawful. We thus affirm.

1. *Background.* In reviewing a decision on a motion to suppress, "we accept the judge's subsidiary findings of fact absent clear error 'but conduct an independent review of his ultimate findings and conclusions of law.' " *Commonwealth* v. *Scott,* 440 Mass. 642, 646 (2004), quoting *Commonwealth* v. *Jimenez,* 438 Mass. 213, 218 (2002). We summarize the judge's findings of fact, supplemented with uncontested testimony adduced at the evidentiary hearing. See *Commonwealth* v. *Garcia,* 443 Mass. 824, 828 (2005).

Through an Internet travel service (Expedia.com), the defendant, then twenty-one years of age, reserved a room at a privately

---

[2]The defendant was acquitted on a charge of possession of a class B controlled substance (cocaine) with intent to distribute, G. L. c. 94C, § 32A (*c*).

[3]Execution of the defendant's sentence was stayed by the trial judge pending appeal.

[4]The trial judge was not the motion judge.

[5]In his motion to suppress, the defendant did not argue that art. 14 of the Massachusetts Declaration of Rights affords him any greater protection than the Fourth Amendment to the United States Constitution.

owned hotel in Boston. His reservation was for three nights, commencing on Friday, June 17, and ending on Monday, June 20, 2005. Using his credit card, the defendant prepaid for the entire stay.

On June 17, the defendant arrived at the hotel and was assigned room 718. He signed a registration card.[6] Above his signature on the registration card is the following notice to the guest:

> "This hotel is privately owned and the management reserves the right to lawfully refuse service to anyone. Guests must comply with all [F]ederal, [S]tate, and local laws as well as the hotel's rules and regulations. If a guest does not comply with the above, the guest may be asked to leave the hotel and/or be evicted. The hotel is not responsible for valuables left on the premises.

> "I agree to be personally liable if the indicated person, firm or corporation fails to pay any of the above charges. I agree to have you bill my presented card in the event I fail to sign it."

That evening, at about 8 P.M., a group of visitors entered the hotel carrying beer and announced that they were there to see the defendant. The hotel's night manager, Gerald Good, explained to them that pursuant to the hotel's rules they could not bring alcoholic beverages into the hotel. The visitors left the beer at the hotel desk; one-half hour later, they retrieved the beer and left the hotel.

Later, at about 2:30 A.M., now June 18, two women and four men entered the hotel lobby in a very loud, abusive manner. They appeared to be intoxicated and some of them carried alcoholic beverages. Because hotel rules required the staff, after 11 P.M., to check the identification of anyone who seeks to enter the hotel beyond the lobby without a room key, a hotel security officer as well as Good questioned the group. The security officer asked them for their room keys, which they could not produce. They stated that they were there to visit the defendant.

---

[6] On his registration card, the defendant provided a different address from the one he provided to Expedia.com. Both addresses were in close proximity to the hotel.

Good stepped in and explained the hotel rules to the visitors, namely that he could allow three of them to visit in the defendant's room if the defendant came down and registered them with the hotel. The visitors became verbally abusive to Good, a security officer, and the night audit staff. Another security officer, Herve Pierre Jacques, was called to assist.

In response to Good's request, the defendant came down to the lobby and spoke to Good and his visitors. Good told the defendant that if his friends continued to behave as they had, he (Good) would eject the defendant and his guests from the hotel with the assistance of the Boston police. Good and the defendant asked the visitors to leave; they complied, but continued their verbal abuse as they departed. Good warned the defendant that if the hotel received one more complaint from guests or staff concerning his occupancy, he would be "gone."

During the day on June 18, the hotel managers received complaints from guests about an odor of marijuana in the hallway outside room 718, which is located on a nonsmoking floor. At approximately 7 P.M., Good and Jacques went to room 718 to investigate the complaints. As he stepped from the elevator into the hall near room 718, Good immediately noticed an odor of marijuana concentrated in the vicinity of room 718.

Good knocked on the door to room 718 several times and, after receiving no response, used a master key card to enter the room together with Jacques. No one was inside. In plain view, the men observed a scale, what appeared to be marijuana residue,[7] rolling papers, and a hat on a table in the room. One of them moved that hat and observed additional marijuana on the table. They saw more marijuana in a wide open bag that was on the bed.

The men left the room. Good decided on behalf of the hotel that the defendant would not be permitted to continue to use the room and had a security officer "double-lock" the door so that the defendant would not be able to enter the room. Good returned to the hotel lobby and contacted the Boston police department.

---

[7]The defendant does not dispute that subsequent chemical analysis of what appeared to be various drugs found in his hotel room (and later found in his apartment) revealed that those substances were in fact the controlled substances indicated herein.

At about 7:30 P.M., Detectives William E. Tracy and James Simpson arrived at the hotel and spoke with Good, who relayed what had taken place. A uniformed police officer also was dispatched to the hotel and accompanied the detectives. Good, Jacques, and the officers went to room 718. Using his master key card, Good let the officers inside the room. In plain view, the officers saw what Good and Jacques had observed earlier.

While inside the bedroom, the detectives smelled a strong smell of marijuana from the bathroom. They determined that the smell was coming from a backpack on the bathroom floor; the backpack was unzipped and open. In plain view, the detectives saw clear plastic bags of marijuana near the top of the open backpack. Detective Tracy moved the bags and just underneath them found a loaded nine millimeter handgun. After removing the weapon, he saw a clear bag of cocaine as well as several bundles of cash. The cash amounted to $10,860.

The police officers confiscated the backpack, gun, cash, and drugs from the backpack and left the room. Again, Good had the door to room 718 double-locked to prevent the defendant's entry into the room. The officers waited inside a vacant room across the hall from room 718 to see if the defendant would return. Because he did not return after some time, the officers left.

At approximately 11 P.M., the defendant returned to the hotel and attempted unsuccessfully to enter room 718 with his pass key. Good notified police that the defendant had returned; the detectives came back and arrested the defendant.

While he was in custody, the defendant made statements to the detectives (after having received Miranda warnings) which were used by police to apply for, and obtain, search warrants for room 718 and the defendant's apartment. On June 20, the detectives executed the search warrants. In room 718 the police found a plastic bag with white powder residue and a small pile of marijuana. In the defendant's apartment they discovered cash, cocaine, and mescaline.

As relevant here, in his decision denying the motion to suppress, the motion judge concluded that the entry by Good and Jacques into the defendant's hotel room did not implicate the Fourth Amendment or art. 14 because the men had not contacted police at that point and, as such, they were not acting as agents

of the police. The judge determined that, based on "an accumulating series of misconduct incidents and warnings to the defendant," and Good's own observations and sensory impressions that indicated that the defendant was using the room to commit a criminal offense,[8] the hotel had a lawful and objectively reasonable basis to exclude the defendant from the room by double-locking the door. This action effectively and lawfully ended the defendant's right to use the room, thereby terminating any reasonable expectation of privacy that he had possessed in the room. Because the defendant's privacy expectations had been terminated prior to the arrival of the police, the judge concluded that their entry into the room with Good's consent was lawful. The judge went on to state that the defendant's arrest and the search warrant applications were lawfully based on the evidence seen by the officers when Good permitted them to enter into the room. For these reasons, the judge denied the motion to suppress.

2. *Discussion.* In deciding whether the search of the defendant's hotel room violated the Fourth Amendment and art. 14, "we must first determine whether a search in the constitutional sense took place." *Commonwealth* v. *Porter P.*, 456 Mass. 254, 259 (2010), citing *Commonwealth* v. *Frazier*, 410 Mass. 235, 244 n.3 (1991). "This determination turns on whether the police conduct has intruded on a constitutionally protected reasonable expectation of privacy." *Commonwealth* v. *Porter P.*, *supra*, quoting *Commonwealth* v. *Montanez*, 410 Mass. 290, 301 (1991). See *Kyllo* v. *United States*, 533 U.S. 27, 33 (2001). "The measure of the defendant's expectation of privacy is (1) whether the defendant has manifested a subjective expectation of privacy in the object of the search, and (2) whether society is willing to recognize that expectation as reasonable." *Commonwealth* v. *Porter P.*, *supra*, quoting *Commonwealth* v. *Montanez*, *supra*. "The defendant bears the burden of establishing both elements." *Commonwealth* v. *Montanez*, *supra*.

---

[8]With regard to Good's having smelled marijuana in the vicinity of the defendant's room, we note that, apart from the fact that the floor was designated a nonsmoking floor, his entry into the defendant's room took place before the adoption of G. L. c. 94C, §§ 32L-32N, inserted by St. 2008, c. 387, §§ 2-4, which decriminalized possession of one ounce or less of marijuana. See *Commonwealth* v. *Cruz, ante* 459, 464 (2011).

"If no one has a reasonable expectation of privacy in the place searched, the police are free to search that place without a warrant and without probable cause, as often as they wish." *Commonwealth* v. *Porter P., supra.* "If a defendant has a reasonable expectation of privacy, the police may search the place, in the absence of exigency, only with a warrant supported by probable cause or with consent." *Id.,* and cases cited.

As an initial matter, the Fourth Amendment and art. 14 have been construed to extend their protection to the legitimate privacy expectations of hotel occupants. See *Stoner* v. *California,* 376 U.S. 483, 490 (1964) (guests in hotel rooms enjoy protections against unreasonable searches and seizures under Fourth Amendment "[n]o less than a tenant of a house, or the occupant of a room in a boarding house"); *Commonwealth* v. *Paszko,* 391 Mass. 164, 184-185 (1984) (defendant may have reasonable expectation of privacy in motel room during rental period and prior to abandonment of room). Here, the issue is whether, at the time of the police entry into room 718,[9] the defendant retained a reasonable expectation of privacy therein. We conclude that, in the circumstances, the defendant did not then possess a reasonable expectation of privacy because he had been lawfully evicted by the hotel from the room.

Although a guest may enjoy a reasonable expectation of privacy in a hotel room, his privacy rights and reasonable expectations are limited by the unique and transient nature of his room occupancy. A hotel guest, for example, reasonably understands (or should) that hotel staff generally are able to enter his room to provide various guest services. See *Georgia* v. *Randolph,* 547 U.S. 103, 112 (2006) ("a hotel guest customarily has no reason to expect the manager to allow anyone but his own employees into his room"). Also, it is well settled that a defendant's reasonable expectation of privacy in a hotel room ends when he abandons the room or once his rental period expires. See *Commonwealth* v. *Netto,* 438 Mass. 686, 698 (2003); *Commonwealth* v. *Paszko, supra.* Whether a guest's lawful eviction from a hotel

---

[9]The defendant does not challenge the judge's finding that Good's and Jacques's initial entry into room 718 did not implicate the Fourth Amendment or art. 14 because they were not acting at the initiative of, or as agents of, the police. See *Commonwealth* v. *Jung,* 420 Mass. 675, 686 (1995), and cases cited.

room may cause his previous reasonable expectation of privacy to end is an issue on which we have not passed.

When a guest's hotel rental period has been lawfully terminated, the guest no longer has a legitimate expectation of privacy in the hotel room. See *United States* v. *Rahme*, 813 F.2d 31, 34 (2d Cir. 1987), and cases cited. Several courts, including several circuit courts of the United States Court of Appeals, have concluded in this context that a lawful termination includes a lawful eviction from a hotel room based in part or wholly on a guest's misconduct. See *United States* v. *Molsbarger*, 551 F.3d 809, 811 (8th Cir.), cert. denied, 129 S. Ct. 2168 (2009) (hotel occupant's reasonable expectation of privacy in room terminated when hotel manager with police assistance expelled occupant justifiably based on "raucous behavior"); *United States* v. *Allen*, 106 F.3d 695, 699 (6th Cir.), cert. denied, 520 U.S. 1281 (1997) (concluding hotel manager had properly evicted guest "both because he was not allowed to store illegal drugs on the premises [but had] and because his pre-paid rental period had elapsed"; eviction extinguished guest's privacy rights in room)[10]; *United States* v. *Haddad*, 558 F.2d 968, 975 (9th Cir. 1977) (guest "ejected" for good cause, based on conduct including intoxication, disorderly conduct, and carrying gun in hotel; guest had no reasonable expectation of privacy in room); *Johnson* v. *State*, 285 Ga. 571, 572-574 (2009) (hotel guest had no reasonable expectation of privacy in room after hotel manager terminated his occupancy for selling drugs in room and creating disturbance in hotel); *People* v. *Hardy*, 77 A.D.3d 133, 139-140 (N.Y. 2010) (hotel guest lost reasonable expectation of privacy in room after being ejected based on odors of marijuana and complaints of loud noise from room). The United States Court of Appeals for the Ninth Circuit explained that once a guest is ejected "for good cause, the room revert[s] to the control of the management, and the former occupant [has] no continuing right to privacy in the room." *United*

_____

[10]The United States Court of Appeals for the Sixth Circuit later clarified in *United States* v. *Washington*, 573 F.3d 279, 285 (6th Cir. 2009), that *United States* v. *Allen*, 106 F.3d 695, 699 (6th Cir.), cert. denied, 520 U.S. 1281 (1997), held that "a hotel guest's use of a room for illegal purposes *and* beyond the pre-paid rental period vitiates the guest's reasonable expectation of privacy" (emphasis in original).

*States* v. *Haddad, supra.* The court analogized the situation to one where a rental term expires: "a justified ejection is no different than a termination of the rental period, when 'the guest has completely lost the right to use the room and any privacy associated with it.' " *Id.,* quoting *United States* v. *Croft,* 429 F.2d 884, 887 (10th Cir. 1970).

In the present case, the defendant asserts that his privacy rights in room 718 were valid until June 20, the end of his prepaid stay, and were not terminated prior thereto because he was not notified by the hotel that his stay had been terminated. However, pursuant to the hotel's registration card, the hotel manager had discretionary authority to evict a guest if the guest failed to comply with the hotel's rules and regulations as well as local, State, and Federal law. Eviction, under the terms of the registration card, significantly does not require notice.[11] By signing the registration card, the defendant was notified of the hotel's policies (concerning eviction and absence of notice) even though he may have chosen to ignore them.

In addition, in terms of reasonable, objective societal expectations, the touchstone of the constitutional analysis, the defendant could not have believed that his right to use the hotel room could not be permanently curtailed by management if the hotel became aware of a guest's criminal offense in a room. Nor could he have believed that management could be stymied from taking action if the defendant could evade a run-in with hotel management. We add that, concerning notice to the defendant, the dissent minimizes the significance of the fact that after Good had encountered problems with the defendant's visitors, Good specifically warned the defendant that if there was one more complaint concerning his occupancy, he would be "gone," which the defendant could not reasonably have interpreted to mean anything other than his removal from the hotel. See *post*

---

[11]The Legislature could have imposed a notice requirement on innkeepers, but notably did not. The dissent's inclination to impose a notice requirement in a private, transient relationship would transform this unique relationship into a residential landlord-tenant relationship. *Post* at 830-834. A change in this law is one for the Legislature, not this court, to make. There also can be no doubt that such a change would have an adverse affect on hotel or motel owners attempting to curtail the practice of using hotel rooms in connection with unlawful drug activity.

at note 3. In the circumstances, we reject the defendant's contentions that his eviction was improper based on a lack of notice.[12]

Based on the disruptive and verbally abusive interactions with the defendant's visitors, the odor of marijuana emanating from the defendant's room, and the marijuana observed by Good and Jacques inside the defendant's room, Good reasonably believed that the defendant had violated not only the hotel's rules and regulations, including a violation of the floor's non-smoking policy, but also State law concerning controlled substances. Good thus had legitimate and lawful grounds to evict the defendant from the hotel.

Before the detectives went to and entered room 718, Good took affirmative steps to effectuate the eviction by physically preventing the defendant's entry into the room by double-locking the door. Because the hotel's policy permitted eviction without notice if the guest failed to comply with the hotel's rules and regulations, as well as local, State, and Federal laws, once the door to room 718 was double-locked, the defendant's occupancy rights were properly terminated and this action concomitantly terminated his privacy interest in the room and its contents.[13] See *United States* v. *Allen, supra* at 697, 699 (after guest's pre-paid rental period had elapsed, motel manager went to guest's room to see whether he "had skipped without paying" and observed large quantities of marijuana in room; manager engaged "lock-out" deadbolt that only she could open, thereby "divested [guest] of his status as an occupant of the room, and concomitantly terminated his privacy interest"); *Johnson* v. *State, supra* at 574 (where manager had authority to terminate occupancy without notice, action of locking out defendant from room with "inhibit key" effectuated eviction). The subsequent police search was undertaken with Good's consent and was, in the circumstances, constitutional. See *United States* v. *Allen, supra* at 699

---

[12]The dissent acknowledges that the hotel staff could, without notice to the defendant and without his presence or specific consent, enter his room but not evict him from it. *Post* at note 6.

[13]Contrary to the defendant's argument, we do not find our decision in *Commonwealth* v. *Porter P.*, 456 Mass. 254 (2010), analogous. The shelter director of the transitional family shelter did not search the juvenile's room prior to the police search, nor had she evicted the juvenile from his room. *Id.* at 257-258.

(after motel manager locked guest out of room, guest's privacy interests terminated and "manager's consent to the officers' search of the room was all that was required to avoid constitutional infirmity"). See also *Commonwealth* v. *Considine*, 448 Mass. 295, 301 (2007) ("any search for or seizure of contraband by [State trooper] was permissible" once trooper was present in room searched by consent). We therefore reject the defendant's argument that his subsequent statements to police and the results of the searches of room 718 and his apartment pursuant to warrants were unlawful as the fruit of the initial unlawful police search of room 718.

3. *Conclusion.* We affirm the judge's order denying the motion to suppress. The convictions are affirmed.

*So ordered.*

Botsford, J. (dissenting, with whom Duffly, J., joins). The court acknowledges, as a first premise, that hotel guests have a legitimate expectation of privacy in their hotel rooms, and that the full protection of the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights applies to that expectation — including protection against unreasonable searches and seizures. This premise is unquestionably correct. See, e.g., *Stoner* v. *California*, 376 U.S. 483, 490 (1964); *Commonwealth* v. *Lopez*, 458 Mass. 383, 389 (2010); *Commonwealth* v. *Porter P.*, 456 Mass. 254, 261 (2010). See also 4 W.R. LaFave, Search and Seizure § 8.5(a), at 208-209 (4th ed. 2004). But the court then concludes that the warrantless and therefore presumptively unreasonable search by the police of the defendant's prepaid hotel room on June 18, 2005, was permissible because the defendant's expectation of privacy previously had been extinguished by his lawful eviction. *Ante* at 828. Accordingly, the court reasons, no "search" in the constitutional sense occurred. I do not agree and therefore dissent.

As the court states, the right to and expectation of privacy belonging to a hotel guest are limited by the transient nature of his relationship to his hotel room. Thus, it is well established that a hotel guest loses his legitimate expectation of privacy in a hotel room when he stays beyond the period for which he has

paid the hotel, or when he effectively abandons the room. In such a situation, no search in the constitutional sense can be said to have occurred because these types of acts — staying beyond the rental period or abandonment — signal that the person knew or reasonably should have understood or expected that he no longer had a legitimate right to use the hotel room, or at least to assert exclusive possession over it. See, e.g., *Commonwealth* v. *Netto*, 438 Mass. 686, 698 (2003) (where guests did not return to room because of arrest on murder charges, from motel's perspective, room had been abandoned and guests "no longer had any reasonable expectation of privacy in the room, as it would not have been reasonable for them to expect that motel personnel would not disturb the room or the belongings they had left behind"). See also *Commonwealth* v. *Paszko*, 391 Mass. 164, 184-186 (1984) (discussing abandonment and ending of rental period as events that defeat motel guest's reasonable expectation of privacy in room). See generally 4 W.R. LaFave, Search and Seizure, *supra* at § 8.5(a), at 214-215.

To abandonment and staying beyond the rental period, the court now adds being lawfully evicted by the hotel as a basis on which a person loses his protected privacy expectation. I agree that a hotel's lawful eviction of a guest from his room *may* terminate the guest's legitimate expectation of privacy. For the termination to occur, however, what is necessary — and what is missing from the court's formulation — is that the hotel actually carry out the eviction in an objectively recognizable manner, and that the guest being evicted have knowledge of the eviction before or when it occurs, or at least before the police conduct their search of the room.

The reason that the guest's knowledge of the eviction is critical is tied to the protection offered by the Fourth Amendment (and art. 14). "[T]he Fourth Amendment protects people, not places." *Katz* v. *United States*, 389 U.S. 347, 351 (1967). An expectation of privacy signifies a person's anticipation, belief, or understanding that he may preserve a particular place as private. See *id.* By definition, a person's belief or understanding cannot be terminated without the person's knowledge or awareness. Tellingly, in all but one of the cases the court cites to support its conclusion that a hotel's lawful eviction terminates the

guest's expectation of privacy in his room, the facts show that (1) the guest was very much aware of the eviction as it was taking place — and therefore could be held to know that with the loss of the rented room, he was also losing his expectation that the room was his private space; and (2) the challenged police search took place thereafter.[1] See *United States* v. *Molsbarger*, 551 F.3d 809, 811-812 (8th Cir.), cert. denied, 129 S. Ct. 2168 (2009) (police assisted hotel manager in physically evicting guests on account of loud behavior and suspected drug dealing; defendant, one of guests in room, was recognized by police as subject of outstanding arrest warrants; subsequent search of hotel room was incident to his arrest); *United States* v. *Allen*, 106 F.3d 695, 699 (6th Cir.), cert. denied, 520 U.S. 1281 (1997), clarified by *United States* v. *Washington*, 573 F.3d 279, 285 (6th Cir. 2009) (defendant's rental period had expired because of his failure to pay room rate before search occurred; that fact, combined with his use of room for illegal purposes, ended his reasonable expectation of privacy); *United States* v. *Haddad*, 558 F.2d 968, 971, 975 (9th Cir. 1977) (defendant checked out of room after being ejected with his knowledge, telling police he did not want any belongings he might have left behind; search of room occurred thereafter); *People* v. *Hardy*, 77 A.D.3d 133, 135-136, 139-141 (N.Y. 2010) (based on defendant's failure to pay room charge, complaints of loud noise and smell of marijuana, hotel staff sought police assistance in evicting defendant; defendant in room when police arrived to assist; after hotel employee told defendant hotel wanted him to pack and leave,

---

[1] The one case cited by the court where the defendant was deemed evicted without notice is *Johnson* v. *State*, 285 Ga. 571 (2009). There, the hotel followed its eviction protocol, but the defendant was not present to receive the obligatory telephone call or knock on the door that was to precede eviction. *Id.* at 571-572. The court deemed this type of eviction permissible, however, because Georgia has an innkeeper statute that expressly provides that notice is not necessary for a hotel's "termination of [a guest's] occupancy for cause, such as failure to pay sums due, failure to abide by rules of occupancy, failure to have or maintain reservations, or other action by a guest." *Id.* at 574 n.11, quoting Ga. Code Ann. § 43-21-3.1(b) (LexisNexis 2008). There is no similar provision in the Massachusetts innkeeper's statute, G. L. c. 140, § 12B. This statute speaks not of eviction but only of "removal" of a guest for certain reasons, and implies that the guest be present for the removal, because the statute directs the hotel to tender to the guest any unused portion of a prepayment "at the time of removal." *Id.*

police saw contraband in plain view, arrested defendant, and conducted search of room).

In contrast to the cases just cited, the only reasonable view of the facts in this case indicates that at the time the police entered and conducted the warrantless search of the defendant's fully paid-for room, he had no knowledge that the hotel had purported to evict him. Although the hotel staff had "double-locked" his room, the defendant was not present when that was done, and did not learn of it at any time before the police search — for which the defendant also was absent.[2] The hotel registration card informs a guest, including the defendant, that if he does not comply with all Federal, State, and local laws, as well as hotel rules and regulations, he "*may* be asked to leave the hotel and/or be evicted" (emphasis added). Notably, however, the card does not state that the defendant *will* "be asked to leave the hotel and/or be evicted" for such a violation, and certainly does not indicate that he will be evicted without notice.[3] Furthermore, again in contrast to the cited cases, it is far from evident that the hotel can be said actually to have evicted the defendant. The record indicates only that the hotel double-locked the door to the defendant's room to prevent his reentry. It is questionable whether this was enough to effect the defendant's eviction. See *United States* v. *Young*, 573 F.3d 711, 720 (9th Cir. 2009).[4]

---

[2] The defendant did not return to the hotel until approximately three hours after the police completed their warrantless search of room 718.

[3] The court concludes that under the terms of the registration card, the manager was authorized to evict a guest without notice. *Ante* at 827. I find no language in the registration card to support this view; rather, the card is completely silent on the notice question. Given the fact that the word "eviction" is usually associated with landlord-tenant matters, and that in the landlord-tenant context, eviction generally requires notice, see, e.g., G. L. c. 239, § 1A, it is not reasonable to assume that a hotel guest, including the defendant, would understand or interpret the single word "eviction" on the registration card as signaling that he could be evicted without notice.

It is true that the hotel's night manager told the defendant in the early morning hours of June 18 that if there were one more complaint from another guest or hotel staff, the defendant would be "gone." This warning may indeed be significant in terms of putting the defendant on notice that his continued stay at the hotel was in jeopardy, but the warning did *not* inform the defendant that he was subject to eviction without any notice. Nothing in the record indicates that at the time the hotel later double-locked the defendant's room and the police conducted their search, the defendant knew there had been additional complaints.

[4] The United States Court of Appeals for the Ninth Circuit considered facts

The court sets out the established test for measuring whether a defendant's expectation of privacy is reasonable and entitled to constitutional protection: "(1) whether the defendant has manifested a subjective expectation of privacy in the object of the search, and (2) whether society is willing to recognize that expectation as reasonable." *Ante* at 824, quoting *Commonwealth v. Porter P.*, 456 Mass. at 259. Considering the first part of this test, there is no dispute that the defendant had a subjective expectation of privacy in room 718, a room that he paid to stay in from June 17 to June 20, and secured when he left it to go out during the day on June 18.[5] On the second part of the test, however, the court appears to conclude that society would not be prepared to consider the defendant's privacy expectation as reasonable once the hotel management "became aware of [the defendant's] criminal offense in a room," because in those circumstances the defendant could not reasonably have continued to believe that the hotel would not be entitled to terminate his right to use the room. *Ante* at 827. This reasoning is flawed. The question is not whether the defendant reasonably could have thought that the hotel was powerless to remove him from the hotel at any point during his prepaid rental period once the

quite similar to the facts of this case, and affirmed the determination of the trial judge that no eviction of the defendant had occurred. *United States* v. *Young*, 573 F.3d 711, 716-717, 719-720 (9th Cir. 2009) (*Young*). The court observed that the only affirmative act the hotel had taken toward eviction of the defendant was to place his hotel room on "electronic lockout," which would not necessarily signal to the defendant, when he tried to enter the room thereafter, that he had been evicted as opposed to having a key that did not work. *Id*. at 716-717. The court also pointed to other factors indicating a lack of eviction, including that the defendant was never told by any member of the hotel's staff that he had been evicted; his belongings were not removed from the room and placed into storage; and there was no indication his name had been removed from the hotel's list of registered guests. *Id*. at 717. These same factors also apply in the present case: the defendant was never told that he had been evicted, his belongings were never removed from the room until the police took them, and there is no evidence that the defendant had been removed from the registered guest list. There are differences between the case before us and *Young* — among them, that the hotel's staff in *Young* appeared to consider the defendant still to be in possession of his room at the time the search occurred, see *id*. at 717 — but the court's point is persuasive in *Young* that merely rendering a guest's key inoperable does not by itself constitute an eviction.

[5]In addition, when the defendant returned to the hotel around 11 P.M. on June 18, he tried — and was not prevented from doing so by the hotel staff — to use his room key to enter what he evidently considered still to be his room.

hotel's management learned he was engaging in criminal conduct in his room. Rather, the issue is whether society would accept as reasonable the proposition that any hotel guest, even one who is engaging in misconduct in his room, should be, and is, entitled to maintain his expectation of privacy in that room unless and until the hotel actually notifies him that he has been or is being evicted on account of that conduct. I believe the clear answer is yes. See *Stoner* v. *California*, 376 U.S. at 489-490 (in defendant's absence, hotel clerk admitted police into defendant's room at their request to investigate defendant's possible involvement in reported robbery; Supreme Court overturned denial of defendant's motion to suppress evidence found in room: "No less than a tenant of a house, or the occupant of a room in a boarding house . . . a guest in a hotel room is entitled to constitutional protection against unreasonable searches and seizures. . . . That protection would disappear if it were left to depend upon the unfettered discretion of an employee of the hotel. It follows that this search without a warrant was unlawful"). See also *Commonwealth* v. *Porter P.*, 456 Mass. at 262, 275 (where juvenile had reasonable expectation of privacy in his room in transitional shelter, warrantless search of room by police was unreasonable because shelter director could not supply valid consent to search and no exigent circumstance justified absence of warrant); *Commonwealth* v. *Neilson*, 423 Mass. 75, 80 (1996) (college student had legitimate expectation of privacy in his dormitory room; State college officials could not authorize police to search defendant's dormitory room without warrant and evidence seized in search was properly suppressed).

Because, in my view, the defendant had not lost his legitimate expectation of privacy in room 718 at the time the police, at the invitation of the hotel, entered and searched the room on June 18, that search was subject to constitutional requirements. And because no warrant had been obtained and no exception to the warrant requirement applied, the search was unreasonable and the evidence seized as well as the fruits of that search should have been suppressed.

I make two final observations. First, the implications of the court's holding that the defendant's reasonable expectation of

privacy ended by "eviction" in accordance with the hotel registration card, regardless of whether the defendant was aware of his purported eviction, are far reaching. This defendant does not present a sympathetic picture: his room smelled of marijuana and was indeed filled with marijuana and other drugs; he appeared to have been selling drugs (given the presence of a scale and a large amount of cash in the room); he had a handgun within the room; and his intended guests were loud and rude to the hotel's management and staff. But the court's decision reaches much more broadly. For example, in light of the statement on the hotel registration card that a guest may be evicted for violation of the hotel's rules, presumably the hotel would be free to evict a guest staying in a room on a nonsmoking floor on the ground that the chambermaid found cigarette butts in the guest's room. In such a case, if the manager were to double-lock the door of the room while that guest is out — signaling, according to the court, a completed eviction — it would appear perfectly permissible under the court's reasoning for the manager immediately to contact the police to enter and search the room and all the guest's belongings because, as the court has decided, by virtue of the manager's unilateral actions, the guest, unbeknownst to her, no longer had a reasonable expectation of privacy. That is a disturbing result.

Second, to conclude on the facts presented that the police were not entitled to enter and search room 718 when they did, does not mean that the hotel and the police were powerless to act. As the court indicates, no one challenges the authority of the hotel management and staff to enter a guest's hotel room without his presence or specific consent. If, as was the case here, members of the hotel staff observed marijuana and a scale on entering the defendant's room, they were free to convey that information to the police, and the police could have posted an officer to secure the room and used the hotel staff's information to secure a search warrant. See *Commonwealth* v. *Neilson*, 423 Mass. at 79 n.5.[6]

For these reasons, I respectfully dissent.

---

[6]Alternatively, if the hotel staff had seized the marijuana, scale, and other items in the defendant's room that indicated criminal conduct and handed them over to the police, this would not be barred by the Fourth Amendment to the United States Constitution or art. 14 of the Massachusetts Declaration of Rights. See *Commonwealth* v. *Leone*, 386 Mass. 329, 333 (1982).