A11A0631. LEWIS v. RITZ CARLTON HOTEL COMPANY, LLC et al.
(712 SE2d 91)

MIKELL, Judge.

Ronald E. Lewis sued Ritz Carlton Hotel Company, LLC, and Bianca Celestin seeking damages for false imprisonment and malicious prosecution arising out of Lewis's arrest at the Ritz Carlton in Atlanta and his subsequent prosecution for criminal trespass.[1] The trial court granted Ritz Carlton's and Celestin's motion for summary judgment. Lewis appeals, arguing that material issues of fact remain for a jury. For the reasons set forth below, we find no error and affirm.

> To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the non-moving party, warrant judgment as a matter of law. A *defendant* may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of the plaintiff's case. Our review of an appeal from summary judgment is de novo.[2]

So viewed, the evidence shows that in May 2006, Lewis flew to Atlanta to attend graduation ceremonies at Morehouse College, and he was picked up at the airport by his friend, Andre Patillo. Lewis and Patillo drove to the Ritz Carlton hotel. After Lewis checked in, Lewis left his bags in his room, the presidential suite, and he and Patillo went directly to the hotel's club lounge where Lewis ordered a drink. Lewis began speaking loudly on his cell phone, and other patrons complained to the staff. When Lewis went to the bar for another drink the attendant told Lewis that she would not serve him because he appeared to be intoxicated. Lewis kept repeating his request to be served, and after another guest asked Lewis to "leave

---

[1] Lewis also asserted a count for false arrest, but he later abandoned that claim.

[2] (Citation, punctuation and footnote omitted; emphasis in original.) *Adams v. Carlisle*, 278 Ga. App. 777, 778 (630 SE2d 529) (2006).

it alone," Lewis told him to "sit his ass down" and stay out of his business. According to the concierge, Lewis made his point using "racially charged" language, after which several guests got up and left the lounge. Lewis deposed that he was not intoxicated, and stated that "if I laughed too loud, if I talked too loud" or if he told someone to "sit his ass down," there was nevertheless no "yelling, screaming, no pushing, shoving, none of that. Nothing."[3]

Celestin, the hotel manager, received a call from security, who asked her to go to the club lounge. She went to the lounge, identified herself to Lewis as the hotel manager, and she asked Lewis to lower his voice. She later asked him to leave the lounge and go to his room. Lewis did not leave the lounge when asked, but he eventually went to his suite. Shortly thereafter, Lewis heard a loud knock at the door, and Patillo let a policeman and Celestin into the room. According to Lewis, the officer told him "[y]ou're either voluntarily like leaving the hotel, or I'm arresting you." Lewis asked to give his side of the story, and when the officer was not interested, Lewis told the officer "since you're taking that attitude, do what you think should happen." The officer then handcuffed Lewis and escorted him out of the hotel and to his police car. According to Patillo, the police officer repeatedly insisted that Lewis get his belongings and leave the hotel before the officer arrested Lewis.

The arresting officer deposed that he was dispatched to the Ritz Carlton, where he spoke with managers who complained of an unruly guest who refused to leave. The officer accompanied management and hotel security to Lewis's room, where he asked Lewis to leave the hotel. Lewis protested that he had done nothing wrong, and after Lewis refused to comply with several requests to leave, the officer arrested him and took him to jail on charges of criminal trespass. Lewis's accusation for criminal trespass was subsequently nolle prossed with the notation "lack of probable cause."

1. Lewis contends that material issues of fact remain for a jury on his claim of false imprisonment. We disagree.

The essential element of false imprisonment is an unlawful detention.[4] "Arresting or procuring the arrest of a person without a warrant constitutes a tort, unless he can justify under some of the exceptions in which arrest and imprisonment without a warrant are permitted by law."[5] The overall legality of the warrantless arrest, including both probable cause and exigent circumstances, "is the

---

[3] Lewis also denied making certain particularly offensive comments to hotel employees.

[4] See *Collins v. Sadlo*, 167 Ga. App. 317, 318 (306 SE2d 390) (1983).

[5] (Citations and punctuation omitted.) *Ferrell v. Mikula*, 295 Ga. App. 326, 330 (2) (672 SE2d 7) (2008).

decisive factor."[6] If Lewis's detention was unlawful, the issue becomes whether Ritz Carlton and Celestin caused the arrest. "The party need not expressly request an arrest, but may be liable if his conduct and acts procured and directed the arrest."[7]

Lewis challenges the legality of his arrest for criminal trespass on two grounds. First, he contends that hotel management could not evict him from his hotel room without advance notice.[8] Second, Lewis contends that a jury should consider whether his eviction by a police officer amounted to a criminal trespass warning. We find that both these arguments lack merit.

A hotel keeper may evict a guest without advance notice for cause, including failure to pay the bill, lack of reservations, failure to abide by the rules of occupancy or "other action by a guest."[9] Thus a hotel manager is entitled to terminate a room rental agreement without prior notice for, among other things, "creating a disturbance at the hotel."[10] Uncontradicted evidence showed that Lewis's behavior caused customers to complain and to leave the club lounge and, although Lewis denied making certain particularly offensive comments to hotel staff, he admits telling another guest to "sit his ass down."[11] Accordingly, notwithstanding Lewis's testimony as to the appropriateness of his behavior, Celestin had grounds to conclude that Lewis was causing a disturbance on the property. We find that Celestin, as the hotel manager, was accordingly authorized to evict Lewis for cause and was not required to give the advance notice contemplated by OCGA § 43-21-3.1 (a).[12]

We also conclude that the officer's instructions to Lewis consti-

---

[6] (Citation omitted.) *Collins*, supra at 320.

[7] (Citation and punctuation omitted.) *Ferrell*, supra.

[8] Georgia law provides:
 Whenever the keeper of a hotel, apartment hotel, boarding house, inn, or other accommodations furnished on a day-to-day or weekly basis wishes to terminate the occupancy of a guest for reasons other than those described in subsection (b) of this Code section, the keeper shall give notice of such intention to the guest. The period of time to be specified in the notice as to when the occupancy will be declared terminated by the keeper shall be equal to the period of time for which occupancy is paid for by the guest and accepted by the keeper.
OCGA § 43-21-3.1 (a).

[9] OCGA § 43-21-3.1 (b). "The notice requirement of subsection (a) of this Code section shall not apply to a termination of occupancy for cause, such as failure to pay sums due, failure to abide by rules of occupancy, failure to have or maintain reservations, or other action by a guest." Id.

[10] (Footnote omitted.) *Johnson v. State*, 285 Ga. 571, 574 (679 SE2d 340) (2009).

[11] Hotel policy authorized the removal of guests for conduct offensive or abusive to other guests or employees.

[12] See, e.g., *Johnson*, supra.

tuted a criminal trespass warning.

> A person commits the offense of criminal trespass when he or she knowingly and without authority: . . . Remains upon the land or premises of another person or within the vehicle, railroad car, aircraft, or watercraft of another person after receiving notice from the owner, rightful occupant, or, upon proper identification, an authorized representative of the owner or rightful occupant to depart.[13]

Lewis's own testimony shows that the officer notified Lewis to depart the hotel and that Lewis did not, in fact, depart. That the officer was acting with the authority and direction of Ritz Carlton and hotel management in notifying Lewis that he must leave the premises is also established by the evidence, including that the officer responded to a 911 call from the Ritz Carlton, that he was informed by hotel personnel that Lewis was unruly and refused to leave, and that Celestin and hotel security accompanied the officer to Lewis's room.[14]

"Probable cause is defined to be the existence of such facts and circumstances as would excite the *belief* in a reasonable mind, that the person charged was guilty of the crime for which he was arrested and prosecuted."[15] In light of the foregoing, including Lewis's refusal to leave the hotel when instructed to do so by a police officer in the presence of hotel management, the "facts and circumstances [were] sufficient for a prudent person to believe [Lewis] committed [the] offense" of criminal trespass.[16] Further, exigent circumstances authorized the warrantless arrest because "the offense [was] committed in such officer's presence or within such officer's immediate knowledge."[17] Accordingly, no issue of material fact remained as to the probable cause and exigent circumstances which authorized Lewis's arrest on the charge of criminal trespass, and the trial court correctly granted summary judgment to Ritz Carlton and Celestin

---

[13] OCGA § 16-7-21 (b) (3).

[14] Compare *Jackson v. State*, 242 Ga. App. 113 (528 SE2d 864) (2000) (criminal trespass conviction reversed due to a lack of evidence that the officer acted on behalf of the apartment manager in instructing the defendant not to enter the property).

[15] (Footnote omitted; emphasis in original.) *Adams*, supra at 782 (1).

[16] (Citation omitted.) *Patterson v. State*, 274 Ga. 713, 716 (2) (599 SE2d 472) (2002). See *Arbee v. Collins*, 219 Ga. App. 63, 66 (1) (463 SE2d 922) (1995) (undisputed evidence established probable cause to believe plaintiff committed criminal trespass); *Mohamud v. Wachovia Corp.*, 260 Ga. App. 612 (580 SE2d 259) (2003) (same).

[17] OCGA § 17-4-20 (a). See *Patterson*, supra at 716 (2) ("when the arresting officer obtained [information giving rise to probable cause to believe that defendant committed criminal trespass] in [defendant's] presence and outside [defendant's] home, there was a sufficient exigent circumstance to justify a warrantless arrest") (citation omitted).

on Lewis's false imprisonment claim.

2. We also find that the trial court properly granted summary judgment to Ritz Carlton and Celestin on Lewis's claim of malicious prosecution. To establish malicious prosecution, Lewis was required to show, among other things, that Ritz Carlton and Celestin lacked probable cause to accuse him of criminal trespass.[18] As shown by our analysis in Division 1, supra, the undisputed evidence established such probable cause. Lewis's sole argument, without citation to supporting authority, is that a material issue of fact exists because the nolle prosequi stated that there was a lack of probable cause. The nolle prosequi was entered by the solicitor-general, and consented to by a state court judge. "Nolle prosequi is the State's formal action on its decision not to further prosecute an [accusation]."[19] Assuming that the solicitor-general's decision to nolle pros the accusation is comparable to a dismissal of criminal charges, which may be considered as nonconclusive evidence of a lack of probable cause in a malicious prosecution action,[20] we cannot conclude that the nolle pros, in itself, is sufficient to create an issue of material fact given, among other things, Lewis's own testimony as to the events that led to his arrest.[21]

*Judgment affirmed. Smith, P. J., and Dillard, J., concur.*

DECIDED JUNE 15, 2011 — 

*Daniel R. Meachum*, for appellant.

---

[18] Lewis
was required to prove that (i) [he] was prosecuted for a criminal offense; (ii) the prosecution was instigated under a valid warrant, accusation, or summons; (iii) the prosecution terminated in [his] favor; (iv) [Ritz Carlton and Celestin] acted with malice in instigating the prosecution; (v) [Ritz Carlton and Celestin] lacked probable cause to accuse [Lewis] of the crime at issue; and (vi) [he] suffered damage as a result of the prosecution.
(Footnote omitted.) *Gooch v. Tudor*, 296 Ga. App. 414, 416 (1) (674 SE2d 331) (2009). Although Ritz Carlton and Celestin may not have actively sought Lewis's arrest and accusation, Lewis need only show that their "conduct resulted in the initiation of criminal proceedings against [him]." (Citation omitted.) *Id.* at 418 (1) (b).

[19] (Citation omitted.) *Buice v. State*, 272 Ga. 323, 324 (528 SE2d 788) (2000). See OCGA § 15-18-66 (b) (10) (solicitors-general have authority "[t]o enter a nolle prosequi on any accusation, citation, or summons filed and pending").

[20] *Melton v. LaCalamito*, 158 Ga. App. 820, 824 (2) (b) (282 SE2d 393) (1981) ("While not conclusive, the dismissal of the charge is evidence that probable cause was lacking.") (citation omitted). Accord *Simmons v. Mableton Finance Co.*, 254 Ga. App. 363, 365 (2) (562 SE2d 794) (2002).

[21] Compare *Melton*, supra ("We find particularly persuasive the fact that the criminal charge against appellee was dismissed following a preliminary hearing at which essentially the same facts as were known to [defendant] when [plaintiff] was arrested were presented to a magistrate.").

*Gray, Rust, St. Amand, Moffett & Brieske, Jeffrey M. Wasick*, for appellees.