NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-843

COMMONWEALTH

vs.

THOMAS J. KEARNEY.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a search of his hotel room uncovered a firearm, ammunition, and drugs, the defendant was arrested and charged with various offenses.  He moved to suppress the items seized during the search; after that motion was denied, the defendant brought this interlocutory appeal.  We affirm.

Background.  "'In reviewing a ruling on a motion to suppress evidence, we accept the judge's subsidiary findings of fact absent clear error,' and we defer to the judge's determination of the weight and credibility to be given to oral testimony presented at a motion hearing."  Commonwealth v. Hoose, 467 Mass. 395, 399 (2014), quoting Commonwealth v. Contos, 435 Mass. 19, 32 (2001).  "[F]indings drawn partly or

wholly from testimonial evidence are accorded deference and not set aside unless clearly erroneous." Commonwealth v. Tremblay, 480 Mass. 645, 655 (2018).

The defendant posted images of himself in a downtown Boston hotel, including a video recording in which he brandished a firearm on a social media application known as Snapchat. The postings attracted the attention of a Boston police detective monitoring social media. In the video footage, the defendant rode an elevator to a twenty-sixth floor suite and identified himself as "TK." From the scenery in the background and other information, the detective identified the hotel.

Thereafter, a group of police officers in plain clothes went to the hotel. They identified themselves to the desk clerk as officers and learned that the defendant was a hotel guest on the twenty-sixth floor. During a discussion with hotel management, the officers learned that firearms are not allowed in the hotel under any circumstances, regardless of whether the guest has a license to carry.

At that moment, the detective who had seen the images on Snapchat saw the defendant get out of an elevator and walk through the hotel lobby toward the front entrance. The detective (who testified, and whose testimony the judge credited) recognized the defendant because he was wearing the same clothes he wore in the video footage, as well as the same

2

jewelry, a gem necklace with a large "TK" logo.  The officers stopped the defendant, identified themselves as police officers, and informed him that they believed he had a gun in the hotel. Officers advised the defendant of his Miranda rights.[1]  They asked whether he had a gun on his person or in his hotel room, and the defendant responded that he had a gun in a drawer in his hotel suite and that a friend was also in the suite.  The defendant admitted that he did not have a license to carry.

After the defendant made these admissions, the officers advised hotel management that they believed there was a gun in the hotel suite on the twenty-sixth floor.  Hotel management responded that the defendant's hotel stay was terminated and that his suite should be vacated.  Together with hotel management and security, the officers went to the twenty-sixth floor.  Hotel management admitted the officers to the room where they found a loaded nine-millimeter handgun, marijuana, and $10,000 in cash.  The defendant was charged with carrying a loaded firearm without a license (G. L. c. 269, § 10 [n]); possessing ammunition without a firearm identification (FID) card (G. L. c. 269, § 10 [h] [1]); possessing a large-capacity firearm (G. L. c. 269, § 10 [m]), later dismissed at the request of the Commonwealth; improper storage of a large-capacity

_____

[1] The defendant did not move to suppress his subsequent statements.

3

firearm (G. L. c. 140, § 131L [a], [b]), later amended to possession of a firearm without a license (G. L. c. 269, § 10 [a]); possession of a firearm during the commission of a felony (G. L. c. 265, § 18B); and distribution of a class D substance (G. L. c. 94C, § 32C [a]).

Discussion. As noted above, "we adopt the motion judge's factual findings absent clear error"; we "independently determine whether the judge correctly applied constitutional principles to the facts as found." Commonwealth v. Isaiah I., 450 Mass. 818, 821 (2008). The parties agree, and we concur, that the analysis in this case is governed by Commonwealth v. Molina, 459 Mass. 819 (2011).

"To determine whether the search of the [hotel] room violated the Fourth Amendment [and] art.14 . . ., we must first determine whether a search in the constitutional sense took place." Commonwealth v. Porter P., 456 Mass. 254, 259 (2010). "This determination turns on whether the police conduct has intruded on a constitutionally protected reasonable expectation of privacy." Id., quoting Commonwealth v. Montanez, 410 Mass. 290, 301 (1991). "The measure of the defendant's expectation of privacy is (1) whether the defendant has manifested a subjective expectation of privacy in the object of the search, and (2) whether society is willing to recognize that expectation as reasonable." Molina, supra at 824, quoting Porter P., supra.

4

"The defendant bears the burden of establishing both elements."
Montanez, supra.

"Although a guest may enjoy a reasonable expectation of
privacy in a hotel room, his privacy rights and reasonable
expectations are limited by the unique and transient nature of
his room occupancy."  Molina, 459 Mass. at 825.  Among those
limitations, hotel management may lawfully evict a guest "based
in part or wholly on a guest's misconduct."  Id. at 826.  "[A]
justified ejection is no different than a termination of the
rental period, when the guest has completely lost the right to
use the room and any privacy associated with it" (quotation and
citation omitted).  Id. at 827.  When a hotel evicts a guest,
"the room revert[s] to the control of the management," and "the
guest no longer has a legitimate expectation of privacy in the
hotel room" (citation omitted).  Id. at 826.

The defendant maintains that he had a reasonable
expectation of privacy because hotel management did not provide
him "actual or constructive notice" that his stay was
terminated.  The Supreme Judicial Court rejected this argument
in Molina, 459 Mass. at 827.  As the court noted, "[t]he
Legislature could have imposed a notice requirement on
innkeepers, but notably did not."  Id. at 827 n.11.  Rather, the
court concluded, "in terms of reasonable, objective societal
expectations, the touchstone of the constitutional analysis, the

5

defendant could not have believed that his right to use the hotel room could not be permanently curtailed by management if the hotel became aware of [his] criminal offense in a room." Id. at 827. "Nor could he have believed that management could be stymied from taking action if the defendant could evade a run-in with hotel management" and thus avoid receiving notice. Id.

Once hotel management told the police that the defendant's stay was terminated, the defendant was "ejected for good cause, the room revert[ed] to the control of the management, and the [defendant had] no continuing right to privacy in the room" (quotation and citation omitted). Molina, 459 Mass. at 826. "The subsequent police search was undertaken with [hotel management's] consent and was, in the circumstances, constitutional." Id. at 828.

In addition, although the judge did not address the issue, we agree with the Commonwealth's argument that, alternatively, the search was independently justified by exigent circumstances. Once the defendant admitted that he had something he was "not supposed to" in the hotel room, namely, an unlicensed firearm, "[t]he officers were entitled to act to insure their safety, the safety of others in the [hotel], and the safety of the public." Commonwealth v. Moore, 54 Mass. App. Ct. 334, 340 (2002).

6

"Generally, a warrant must be secured before a search is conducted, and warrantless searches are presumptively unreasonable" (quotation and citation omitted). Commonwealth v. Ramos, 470 Mass. 740, 745 (2015). However, "this presumption may be overcome when '"the exigencies of the situation" make the need of law enforcement so compelling that [a] warrantless search is objectively reasonable under the Fourth Amendment.'" Id., quoting Kentucky v. King, 563 U.S. 452, 460 (2011).

The Commonwealth must demonstrate "that the authorities had reasonable ground to believe that an exigency existed, and [that their] actions . . . were reasonable under the circumstances" (quotation and citation omitted). Commonwealth v. Morrison, 429 Mass. 511, 515 (1999). This includes demonstrating that the police "had probable cause" and faced circumstances like "danger to their lives, danger to the lives of others, or the destruction of evidence, such that it would be impracticable to obtain a warrant." Moore, 54 Mass. App. Ct. 334 at 338. "Reasonableness must be evaluated in relation to the scene as it could appear to the officers at the time, not as it may seem to a scholar after the event with the benefit of leisured retrospective analysis." Commonwealth v. McDermott, 448 Mass. 750, 766, cert. denied, 552 U.S. 910 (2007), quoting Commonwealth v. Young, 382 Mass. 448, 456 (1981).

7

Here, the officers had probable cause to believe that there was an unlicensed, unsecured firearm in the hotel room, and an unknown person either was in the room or had access to it. The officer testified to concerns about large gatherings in hotels at the time due to the COVID-19 pandemic. Thus, when the police learned there was an unsecured weapon with at least one unknown person remaining in the room, the search of the hotel room became reasonable in the interest of safety for the officers, other hotel occupants, and the public. See Commonwealth v. Samuel, 80 Mass. App. Ct. 560, 563 (2011) (seizure "was necessary to remove the firearm in order to protect life and to prevent injury to others"). See also Moore, 54 Mass. App. Ct. at 339-340 (knowledge of additional "still undiscovered" weapon justified search of duffel bag). The search of the hotel room "did not exceed the scope justified by the exigency and probable

cause to believe that [a] gun remained on the premises." <u>Id</u>. at 340.  "Given the facts, their conduct was reasonable." <u>Id</u>.

<u>Order denying motion to suppress affirmed</u>.

By the Court (Vuono, Hershfang & Tan, JJ.[2]),

Clerk

Entered:  May 8, 2025.

---

[2] The panelists are listed in order of seniority.

9