## McBRIDE v. HOSEY.

### No. 4468.

Court of Civil Appeals of Texas. El Paso.
June 6, 1946.

Rehearing Denied June 27, 1946.

Burges, Scott, Rasberry & Hulse, of El Paso (J. F. Hulse, of El Paso, of counsel), for appellant.

Cunningham, Ward & Cunningham, of El Paso, for appellee.

SUTTON, Justice.

This is an appeal from the Forty-First District Court of El Paso County. On the verdict of a jury the trial court entered judgment for the plaintiff in the sum of $2500, $2000 actual and $500 exemplary damages. The parties will be described here as in the trial court.

Appellee, as plaintiff below, sued the defendant to recover actual damages in the sum of $2500, and exemplary damages in a like sum for the wrongful eviction of plaintiff from a room in the Laughlin Hotel, of which defendant is and was the proprietor, and operated in the city of El Paso.

Plaintiff alleged that he was the guest of the hotel on and for a long time prior to February 8, 1945, when he was wrongfully and unlawfully evicted. Plaintiff said the defendant in November 1944, commenced a

course of tyrannical, harsh and cruel treatment towards plaintiff by requiring him to pay for his room daily, whereas he had paid weekly for a long time prior thereto; that defendant frequently informed plaintiff he was going to put him out of the hotel and did do so on the 8th of February 1945, without cause and in violation of the laws of Texas and of the United States, in that he did not give plaintiff any proper or legal written notice to vacate and without filing suit for possession, and all because the plaintiff had advised the Office of Price Administration defendant was overcharging him for his room at the hotel and because he had received from the defendant a refund of $157. Plaintiff pleaded verbatim 50 U.S.C.A.Appendix; § 904(b), which declares it unlawful for anyone to remove or attempt to remove the tenant or occupant from any housing accommodation, etc. because such tenant or occupant took or proposed to take action authorized or required by the act or any regulation, order or requirement thereunder.

He further alleged the defendant in his absence removed all his personal belongings and possessions from his room and publicly placed them in the lobby of the hotel; that he was locked out of his room and denied the right to re-enter the same, all of which caused plaintiff to suffer humiliation, embarrassment, ridicule, nervousness, mental suffering and injury to his health; and that he was a victim of tuberculosis and that the acts of defendant aggravated his condition and caused him to hemorrhage and expectorate blood and caused his condition to progress. Because of the facts alleged he sought and prayed for $2500 actual and $2500 exemplary damages, as aforesaid.

The defendant answered with numerous special exceptions and a detailed answer sufficient to raise the issues here presented, but unnecessary to repeat.

Plaintiff seeks primarily to sustain his recovery on the answers to issues one and six. Issue No. 1 inquired of the jury if the defendant evicted plaintiff from his room because he had claimed and received a refund through the O.P.A., to which the jury answered yes. Number six asked if the written notice given on February 1st to vacate on the 5th was, under the surrounding facts and circumstances, reasonable as to time in which to vacate, to which they answered no.

The facts, taken from plaintiff's testimony and evidence alone, are substantially as follows:

Plaintiff took a room at the Laughlin Hotel October 29, 1943, on a day basis at $1.75 per day and usually paid weekly. He left El Paso and returned to Alabama, from whence he came, February 23, 1944, and returned to El Paso and the hotel April 8, 1944. On his return he was assigned to room 308 at the same rate he had theretofore paid for room 406. This rate continued until some time in November 1944, when it was adjusted to $1.25 per day and at which time he received the $157 refund. From this date forward he was harshly treated, he says, and required to pay daily. On February 1, 1945, he was in arrears for three days and attempted to pay the clerk in the presence of the defendant for four days, being one day in advance. The defendant refused the payment and caused to be delivered to him a letter on that date to vacate on the fifth. He made no effort to do so. On February the 8th, in plaintiff's absence, the defendant and an assistant removed all the effects and belongings of plaintiff from his room and placed them in the lobby. There is no complaint about the manner of the handling of the effects in the process of removal. This occurred just after the noon hour. About 2 P.M. plaintiff returned and asked the clerk to take him up and was advised he no longer had a room and was shown his belongings in one corner of the lobby. He says he hung his head in shame; got hold of himself and walked out the door. He testified there were six people in the lobby besides the defendant and the clerk. He was embarrassed and humiliated, excited and unnerved over the fact his things had been put in the lobby. When he left the hotel he went to Pound's Drug Store some two and one-half blocks down the same street and where he had worked from time to

time, and sought permission to store his stuff there until he could find a room. He returned and got a boy to help him. He took "a little hand grip, a small one," subsequently described as weighing fifty pounds, and the boy some other things and carried it to the drug store. The rest remained at the hotel. He secured a room at the Knox Hotel, the first and only place to which he applied, and returned to the Laughlin and removed his stuff in a taxi. He remained at the Knox for five days and moved to another lodging place where he had been until the date of the trial. After he got to the Knox he discovered he was expectorating blood, that is to say, his sputum had streaks of red in it, which he had not done for approximately a year before. His medical testimony was that the exercise and carrying the suit case under the conditions might reasonably be said to have caused him to have a little hemorrhage, and that carrying a suit case weighing fifty pounds two and one-half blocks may cause a little hemorrhage; that mental strain would not cause the hemorrhage. The plaintiff had an advanced case of tuberculosis that was progressing rather rapidly, and had previously been advised to have his lung collapsed or to live quietly and take it easy. This is the record testimony in its most favorable light from the plaintiff's standpoint.

On the basis of plaintiff's pleadings and the submission of the case by the trial court it is a little difficult to escape the conclusion the case was presented and tried as a violation of the Price Control Act, supra. In that event the judgment could not stand because plaintiff would be relegated to the remedies provided by the statute and his damages determined thereunder at treble the overcharge, and the remedies available through the Administrator. Bowles, Administrator, v. Warner Holding Co., 8 Cir., 151 F.2d 529, and the authorities cited.

■ Plaintiff, however, in his brief as we understand him, takes the position he is entitled under his pleadings and the finding of the jury to recover as at common law, and the provision of the Price Control Act, supra, merely constituted the eviction unlawful. The testimony is the Administrator in the enforcement of the Act and the rent control regulations promulgated thereunder did not construe and apply it as applicable to a hotel letting its accommodations from day to day on a daily basis and that under such circumstances an eviction was permissible. In other words, a hotel room let on a day basis was not a "housing accommodation." This must be true, because if it were otherwise under the war conditions it would be wholly impracticable for hotels to operate in such manner as to accommodate those who from the very nature of things had to seek and obtain their services.

■ The instant case, with but one exception, is in all respects as nearly identical with the case of Raider v. Dixie Inn et al., 198 Ky. 152, 248 S.W. 229, as might well be. In that case it was held a cause of action was not pleaded. The only difference between that case and this one is there was no claim there of any aggravation of an existing disease. Dewar v. Minneapolis Lodge, 155 Minn. 98, 192 N.W. 358, 32 A.L.R. 1012, is likewise deemed almost a parallel case. It was admitted in the course of the oral argument plaintiff had a right to leave the hotel at any time and defendant had the right to withdraw the hotel privileges at any time, but that the eviction was unlawful and defendant was under the necessity of resorting to legal process, that is, the statutory action of forcible detainer. Of course, that remedy is not applicable since the relation of landlord and tenant does not exist because of the absence of a contract with respect to realty. It is said in 28 Am.Jur., Sec. 50, page 573, that since public inns are conducted for travelers and transient persons, it is not the duty of the innkeeper to keep one who has lost that status; that a person is not entitled to stay indefinitely, and on reasonable notice may be ejected without any other reason and cites the Raider case, supra, and 13 Eng. Rul. Cases 124, which itself cites Lamond v. Richards [1897], 1 Q.B. 541, 66 L.J.Q.B. 315. If such were not the rule in many instances innkeepers would be unable to serve the particular purposes for which

they exist and the classes they undertake to serve and must serve, would be without accommodations. As said in the Raider case if the right to possession existed then the defendant had the right to exclude plaintiff, provided he used no more force than was necessary. There is neither allegation nor proof of any unlawful means, that is so far as the act of ejectment is concerned.

■ It is consistently held that when the right to evict, e. g. when a guest is obnoxious for some reason he may be forcibly removed and without resort to legal process, provided no more force is used than is necessary, 28 Am.Jur., supra, and the cases there cited. Plaintiff can hardly be heard to say ·he did not have reasonable notice, because he alleges and testifies he was harshly treated from November 1944 forward. He must have regarded the written notice of February 1st to vacate as seriously made. The purpose of the notice was to allow time in which to secure other accommodations. This he did, without any considerable delay, at the first place to which he applied after he learned he had been evicted.

■ It is our conclusion, ·therefore, there has been no violation of a legal right and hence there can be no recoverable damage. If it might be said the eviction was unlawful plaintiff has shown no injury as a consequence therefor. The humiliation, embarrassment, ridicule, nervousness and mental suffering claimed standing alone may not be recovered as actual damages. Malin & Browder v. McCutcheon, 33 Tex.Civ.App. 387, 76 S.W. 586; Crawford v. Doggett, 82 Tex. 139, 17 S.W. 929, 27 Am.St.Rep. 859.

■ The claim that plaintiff's tuberculosis had been aggravated and caused to progress is thought, under the proof, to have resulted, if at all, from the exertion incident to carrying the small hand grip after the eviction and not as a result of anything the defendant did in the process of effecting the eviction, and is too remote to be a proximate cause of such injury. Moreover, there was no attempt to prove to what extent plaintiff's illness had been aggravated or increased. This would constitute the measure of damage. St. Louis S. W. Ry. Co. of Texas v. Johnson, 100 Tex. 237, 97 S.W. 1039; Roberts v. Galveston H. & S. A. Ry. Co., 58 Tex.Civ. App. 321, 124 S.W. 230 (error refused).

It follows, therefore, it is our opinion no cause of action has been shown and the trial court was in error in refusing to instruct a verdict for the defendant and in refusing his motion for judgment notwithstanding the verdict, and that the judgment must be reversed and judgment here rendered for the defendant, and it is accordingly so ordered.