# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3874

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | District of North Dakota. |
| | * | |
| Corey Lorent Molsbarger, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: November 12, 2008
Filed: January 6, 2009

_____

Before WOLLMAN, BEAM, and BENTON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Corey Molsbarger was convicted of possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1), and sentenced to 192 months' imprisonment. He appeals, arguing that the district court[1] improperly denied his motion to suppress evidence and that the evidence was insufficient to support the jury's verdict. We affirm.

_____

[1]The Honorable Ralph R. Erickson, United States District Judge for the District of North Dakota.

I.

In the early morning hours of January 6, 2006, the night manager of the Ramada Inn Hotel in Grand Forks, North Dakota, contacted the Grand Forks Police, requesting assistance with quelling a disturbance in Room 101. The manager explained that he had received several complaints about loud partying in the room. He told the police that he had seen many people entering and exiting the room and that he suspected illegal drug activity. The manager said that he had warned the occupants of the room to be quiet, and that he now wanted the police to help evict them.

Officers Schauer, Jacobson, and Moe responded to the call. After speaking with the manager, the officers went with him to Room 101. As they stood outside, the officers heard loud noise and what they believed was a discussion about illegal drug trafficking. Officer Schauer briefly conferred with the hotel manager, who reiterated that he wanted the occupants evicted. Officer Schauer then knocked on the door and asked for permission to enter the room. A woman named Ashley Bigalke answered, but refused to allow the officers to enter the room because it was not hers and she did not know who had rented it. At that point, Officer Schauer told Bigalke that hotel management wanted everyone in the room evicted. He also stated that he was coming into the room and that all the occupants should gather their belongings and leave the hotel.

Shortly after entering the room, Officer Jacobson recognized one of the occupants as Corey Molsbarger, for whom there were outstanding arrest warrants. Molsbarger was lying sideways on the bed, apparently asleep. The officers handcuffed Molsbarger and performed a search incident to arrest. In a nightstand next to the bed, the officers found a methamphetamine pipe and a small butane torch. Molsbarger was carrying $940 cash, and the officers found at the foot of the bed an empty beer box containing approximately one-half pound of methamphetamine, a small digital scale, and some marijuana.

Molsbarger sought to suppress all of the evidence, contending that the search of the hotel room violated his Fourth Amendment rights. The district court denied Molsbarger's motion, and the case proceeded to trial. At trial, the government offered a variety of evidence to prove that the methamphetamine found in the hotel room was Molsbarger's and that he intended to sell it to others. In addition to the officers' testimony about the physical evidence found in the room, Bigalke testified that the methamphetamine belonged to Molsbarger and that she had purchased a small quantity of it from him. Jason Mikula, who was also in the room that night, testified that Molsbarger had agreed to supply him with methamphetamine. Cory Olson, one of Molsbarger's associates, testified that he rented the room for Molsbarger and that he had purchased methamphetamine from Molsbarger on a previous occasion. A Drug Enforcement Administration (DEA) agent provided expert testimony that the quantity of methamphetamine found in the hotel room was consistent with narcotics trafficking.

## II.

Molsbarger's initial argument is that the warrantless search of the hotel room violated his Fourth Amendment rights. In considering a denial of a motion to suppress evidence, "we review the district court's conclusions of law *de novo* and its factual findings for clear error." United States v. Va Lerie, 424 F.3d 694, 700 (8th Cir. 2005) (en banc).

The Fourth Amendment protects individuals from warrantless searches in places where they have a reasonable expectation of privacy, a protection that may extend to a hotel room if certain factors are present. See United States v. Esquivias, 416 F.3d 696, 702 (8th Cir. 2005) (discussing factors such as whether the defendant checked into, paid for, or occupied the room). Both parties focused on the threshold question whether Molsbarger ever had a reasonable expectation of privacy in the room. It is unnecessary to resolve that question, however, because whatever expectation of

privacy Molsbarger may have had, it ceased when he was justifiably evicted from the hotel.

Justifiable eviction terminates a hotel occupant's reasonable expectation of privacy in the room. See United States v. Rambo, 789 F.2d 1289, 1295-96 (8th Cir. 1986); see also United States v. Allen, 106 F.3d 695, 699 (6th Cir. 1997) ("Once 'a hotel guest's rental period has expired or been lawfully terminated, the guest does not have a legitimate expectation of privacy in the hotel room.'") (quoting United States v. Rahme, 813 F.2d 31, 34 (2d Cir. 1987)). This rule is consistent with the Fourth Amendment's goal of protecting the sanctity of private behavior. Disruptive, unauthorized conduct in a hotel room invites intervention from management and termination of the rental agreement. Thus, an individual "cannot assert an expectation of being free from police intrusion upon his solitude and privacy in a place from which he has been justifiably expelled." Rambo, 789 F.2d at 1296.

Molsbarger and the other occupants of the room were creating a public disturbance that prompted several complaints from other hotel occupants about the noise level in the room. Notwithstanding the manager's warning that they quiet down, the occupants of Room 101 continued their raucous behavior. When the police arrived, the manager confirmed that he wanted the occupants evicted. The police justifiably entered the room to assist the manager in expelling the individuals in an orderly fashion. Any right Molsbarger had to be free of government intrusion into the room ended when the hotel manager, properly exercising his authority, decided to evict the unruly guests and asked the police to help him do so. At that point, Molsbarger was identified and determined to be the subject of outstanding arrest warrants, leading to the discovery of the contraband in a search incident to his arrest. We conclude, therefore, that the district court did not err in denying Molsbarger's motion to suppress evidence.

## III.

Molsbarger also contends that the evidence was insufficient to sustain his conviction. "We review the sufficiency of the evidence *de novo*, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." United States v. Hakim, 491 F.3d 843, 845 (8th Cir. 2007) (quotation omitted). The verdict will be upheld "if there is any interpretation of the evidence that could lead a reasonable-minded jury to find the defendant guilty beyond a reasonable doubt." Id. (quoting United States v. Hamilton, 332 F.3d 1144, 1149 (8th Cir. 2003)).

The thrust of Molsbarger's argument is that the government's primary witness, Ashley Bigalke, was unpersuasive because she was high on the night of Molsbarger's arrest and because she gave conflicting testimony at various stages of the government's case. Bigalke's credibility, however, was a question for the jury. See United States v. Barajas, 474 F.3d 1023, 1026 (8th Cir. 2007) ("[W]e do not review questions involving the credibility of witnesses, but leave credibility questions to the jury.") (quotation omitted). Defense counsel subjected Bigalke to a vigorous cross-examination, and it was the jury's prerogative to determine whether her testimony was credible. Moreover, the government presented the jury with other evidence that the room was rented for Molsbarger, that he had agreed to supply Mikula with methamphetamine, and that the quantity of methamphetamine found in the room was consistent with drug trafficking. Thus, a reasonable jury could have found Molsbarger guilty.

The conviction is affirmed.[2]

_____

<hr />

[2]We have considered, and conclude that it is without merit, Molsbarger's late-raised claim that his brief pre-trial transfer from federal to state court violated the Interstate Agreement on Detainers Act, 18 U.S.C. app. § 2, art. III. See United States v. Pardue, 363 F.3d 695, 698 (8th Cir. 2004) (observing that the Act does not apply to pre-trial detainees).