**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued August 5, 2015
Decided August 31, 2015

**Before**

DIANE P. WOOD, *Chief Judge*

WILLIAM J. BAUER, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

No. 14-3586

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,*<br><br>*v.*<br><br>JARVIS TOLBERT, *Defendant-Appellant.* | Appeal from the United States District Court for the Northern District of Indiana, South Bend Division.<br><br>No. 3:14-cr-00034-RLM-CAN-1<br><br>Robert L. Miller, Jr., *Judge.* |

**O R D E R**

Jarvis Tolbert was arrested after police officers found drugs in his South Bend, Indiana, hotel room. He pleaded guilty to possessing cocaine with intent to distribute, *see* 21 U.S.C. § 841(a)(1), but reserved the right to challenge on appeal the denial of a motion to suppress the drugs and his post-arrest confession. We affirm the judgment.

Two hotel employees, two police officers, and Tolbert all testified at the hearing on his motion to suppress. Tolbert said that he had sought to rent a room at the Residence Inn after quarreling with his girlfriend. Hotel policy precluded Tolbert from renting a room without a credit card (which he didn't have), so, Tolbert testified, he

enlisted his friend Drew Dixon to book a room online with his credit card (Dixon did not testify). Christine Dvorak, the hotel's daytime front-desk clerk, testified that Dixon, unaccompanied by Tolbert, checked into Room 912 (a studio suite) around 7 p.m. She handed Dixon a document detailing the hotel's "no party policy," which limits to five the number of people in a studio suite and prohibits smoking in guest rooms, "loud or excessive noise," and "disorderly conduct." The policy admonishes that any violation "will result in immediate eviction" without additional warning. Dixon signed that document.

After Dixon had checked in, said Tolbert, he gave Tolbert the two room keys. Tolbert paid Dixon for the room, and the two parted ways. Tolbert then invited over seven friends to watch a basketball game. Sarah O'Neal, the night-shift clerk, testified that she called Room 912 around 11 p.m. and announced that she was coming to the room to check the "$CO_2$ detector." She testified that she'd received an alert that the device was tampered with, as well as a call from the room above Tolbert's complaining about cigarette smoke. When she arrived at the room, O'Neal said, she saw that Tolbert had "several" people in the room—eight or nine by her estimate—but she said nothing to Tolbert about the no-party policy violations. She checked the device that had caused the alert and admonished everyone in the room that, if they wanted to smoke, they must step off the patio because state law prohibits smoking within eight feet of an entrance. At the hearing O'Neal confirmed that smoking and tampering with safety devices are violations of hotel policy. She added that she had said nothing about the policy at the time because she "was trying to give them a chance."

Later though, O'Neal testified, she saw (from hotel security cameras) "a lot" of people going in and out of the door connecting the parking lot to the building in which Room 912 was located, and she could hear the bass coming from their cars. Then after the hotel guests above Tolbert had called again to complain—this time about the "comings and goings" in the room below them—O'Neal concluded that the situation "was just getting out of hand" and called the police.

When the police arrived, O'Neal testified, she instructed the officers to evict the occupants of Room 912 and, if they refused to leave, arrest them for trespassing. She stayed at the front desk and gave Sergeant Corey Bair and Officer Aaron Brick a master key that would open the door to Tolbert's room. When the officers arrived outside the room, the drapes were closed, but they could tell that the lights and television were on. Bair knocked and identified himself as a police officer but got no response. After knocking a second time without anyone opening the door, the officers

used the key to enter the room. They saw no one inside the main room, so they conducted a "protective sweep" of the rooms not immediately viewable—the bathroom and kitchen—to ensure that no one was hiding. Before leaving, the officers testified, they decided to take the property left in the room—a duffle bag in the bathroom—to the front desk. Bair went to retrieve it and, as he bent over to pick it up, saw—in the unzipped bag—cocaine. The officers seized the bag, and Bair left his business card and a note on the door saying, "We took your dope," and "Call me." A thorough search of the bag—later confirmed to be Tolbert's—turned up powder cocaine, crack cocaine, and marijuana packed alongside his clothing and toiletries.

O'Neal testified that Tolbert appeared at the front desk about 10 minutes after the police had left and asked to get into his room. O'Neal, who had changed the code on the electronic lock, told him that he had been evicted and couldn't go back inside without a police escort. Tolbert left but returned five minutes later and asked O'Neal to call Sergeant Bair. When Bair returned to the hotel, Tolbert told him, "Everything in that room was mine." Bair then gave *Miranda* warnings and recorded Tolbert's confession.

In his written submissions to the district court, Tolbert argued that he had a reasonable expectation of privacy in Room 912 and that the warrantless entry was unreasonable under the Fourth Amendment. That entry, Tolbert added, was not even supported by probable cause or reasonable suspicion. Moreover, Tolbert argued, his confession must be suppressed as the "fruit of the poisonous tree." The government countered that Tolbert's expectation of privacy in the hotel room was extinguished when he was "evicted" (and thus the officers were free to search the entire room without a warrant or probable cause). Tolbert responded that he hadn't been lawfully evicted when the officers entered the hotel room.

The district court denied the motion to suppress. Although Tolbert had a subjective expectation of privacy in the hotel room, the court reasoned, society would no longer view that expectation as reasonable after he had been evicted. And because hotel employee O'Neal had "asked the officers to carry out the eviction," the court continued, the eviction became effective immediately with that conversation. After this adverse ruling, Tolbert entered his conditional guilty plea and was sentenced to 60 months' imprisonment, the statutory minimum. *See* 21 U.S.C. § 841(b)(1)(B).

On appeal, Tolbert argues that his status as a renter had not been terminated when the police entered Room 912, and thus he still had an objectively reasonable expectation of privacy in the room. It follows, he continues, that the police unlawfully

made a warrantless entry, and that the seizure of the drugs cannot be sustained under the plain-view doctrine.

The Fourth Amendment safeguards a person's subjective expectation of privacy in a particular location if society is willing to recognize that interest as reasonable. *United States v. Huart,* 735 F.3d 972, 974–75 (7th Cir. 2013); *United States v. Figueroa-Espana,* 511 F.3d 696, 703 n.1 (7th Cir. 2007); *United States v. Wells,* 739 F.3d 511, 518–19 (10th Cir. 2014). The government concedes that Tolbert was a hotel guest with a subjective expectation of privacy in Room 912, *see Stoner v. California,* 376 U.S. 483, 490 (1964); *Finsel v. Cruppenink,* 326 F.3d 903, 907 (7th Cir. 2003); *United States v. Akin,* 562 F.2d 459, 464 (7th Cir. 1977), so we address only whether Tolbert's expectation of privacy was objectively reasonable when the police entered.

This appeal hinges on whether the district court committed clear error in finding that Tolbert had been evicted from Room 912 as soon as O'Neal instructed the police to kick out the room's occupants. Once a hotel tenancy has been terminated, the hotel guest loses any privacy right in the room. *See United States v. Procknow,* 784 F.3d 421, 426 (7th Cir. 2015); *United States v. Molsbarger,* 551 F.3d 809, 811 (8th Cir. 2009); *United States v. Allen,* 106 F.3d 695, 699 (6th Cir. 1997). Evidence at the hearing established that the hotel had rented Room 912 subject to the condition that guests who violate its no-party policy are subject to immediate eviction. We cannot conclude that the district court committed clear error in finding that O'Neal exercised the hotel's right when she asked the police to kick out the occupants of Room 912. As soon as she authorized the officers to do so, Tolbert's hotel tenancy—and accompanying expectation of privacy—was extinguished. The government, therefore, met its burden of establishing an exception to the general rule that a warrantless search is unreasonable, *see United States v. Basinski,* 226 F.3d 829, 833 (7th Cir. 2000); *United States v. Napue,* 834 F.2d 1311, 1326 (7th Cir. 1987), so there is no reason to disturb the district court's decision.

AFFIRMED.