

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. PD-0676-19

---

### MICHAEL JOSEPH TILGHMAN, Appellant

### v.

### THE STATE OF TEXAS

---

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE THIRD COURT OF APPEALS
### HAYS COUNTY

---

SLAUGHTER, J., delivered the opinion of the Court in which KELLER, P.J., HERVEY, RICHARDSON, YEARY, KEEL, and WALKER, JJ., joined. MCCLURE, J., filed a concurring opinion. NEWELL, J., did not participate.

### O P I N I O N

After hotel management smelled marijuana smoke coming from a guest room, a hotel employee knocked on the door in an attempt to evict the guests. After this attempt was unsuccessful, a manager later requested police assistance with evicting the guests. In assisting with the eviction, police entered the hotel room and witnessed drugs in plain view.

Police then arrested the occupants of the room, conducted a search of the room incident to arrest, and seized the drugs. Was there a Fourth Amendment violation such that the drug evidence was subject to suppression? The short answer is no, because once the hotel took affirmative steps to evict the occupants of the room, those occupants no longer had a reasonable expectation of privacy in the room. We reverse the judgment of the court of appeals which held that the trial court erred in failing to grant Appellant's motion to suppress.

## I.      Background

Appellant Michael Joseph Tilghman and two other men rented Room 123 at the San Marcos Fairfield Marriott Hotel. When the hotel's day manager walked by Appellant's room, he smelled marijuana smoke. The hotel had a no-smoking policy as well as a policy prohibiting illegal activity on hotel grounds. Therefore, the day manager instructed an employee to evict the occupants. The employee knocked on the door of Room 123, but there was no response. A "gentleman" told the employee that "they were gone."

When night manager Joshua Chapman arrived for his shift at around 10:30 p.m., he was apprised of the situation. Chapman also received a call from the day manager instructing him to evict the occupants of Room 123. Before attempting any eviction, Chapman first walked by the room and smelled the marijuana smoke himself. This satisfied him that an eviction was appropriate. But, given the fact that there were multiple men in the room and knowing that drugs were involved, Chapman called the police for assistance with the eviction.

San Marcos Police Officers Daniel Duckworth and Austin Smith responded to Chapman's request for assistance with the eviction. Upon their arrival, Chapman informed them of the situation involving marijuana smoke, the fact that the hotel had tried to evict the men earlier but that no one responded to the employee's knocking, and that he needed their help in evicting the men from Room 123. As soon as another officer arrived as backup, Chapman led the officers to the room. Officer Smith knocked on the door multiple times. Receiving no answer, on the third attempt, Officer Smith announced himself as a police officer. While there was still no response, officers could hear whispering from inside the room. Officer Duckworth told Chapman that the police officers "did not have the right to enter the room, but [Chapman] did." Chapman then used his key to unlock the door and Officer Duckworth opened it.

Upon opening the door but while standing outside the room, Officer Duckworth saw two men standing in the hallway of Room 123 and heard the toilet flushing in the bathroom. He asked if there was anyone else in the room. One of the men visible to Officer Duckworth indicated that there was another man in the bathroom, at which point the man in the bathroom popped his head out and was holding a razor as though he had been shaving. But, Officer Duckworth noted that there was no water or shaving cream on his face. Based on Officer Duckworth's training and experience as a police officer, the delay in answering the door, the sound of a toilet flushing, and the man's explanation that he had been shaving despite having a dry face all led him to believe there was a possibility that drug evidence was being destroyed. As he testified at the suppression hearing, "Narcotics are easily

flushed down the toilet so that's one of the typical things we get. It's very common for people to try to flush narcotics."

Despite his concern over evidence being destroyed, Officer Duckworth remained outside the room and informed the men that "they were no longer welcome at the hotel and that the management was requesting that they gather their belongings and leave." He also informed the men that police had been knocking on the door and no one responded. The men stated that they were playing guitar and did not hear any knocking. Officer Duckworth testified that there were no guitar sounds coming from the room—only whispering.

After Officer Duckworth notified the men that the hotel was evicting them, he stepped into the room. As he crossed the threshold of the room, one of the room's occupants invited the officers in. Officer Duckworth testified that the officers needed to enter the room out of concern for officer safety "because typically with narcotics comes firearms and weapons." He also was concerned about destruction of evidence, but his primary purpose was to ensure officer safety during the eviction.

After instructing the men to collect their belongings, the officers[1] initially stood in different parts of the room watching the men gather their things. But after observing narcotics in plain view, including marijuana and methamphetamine, the officers arrested Appellant and his co-defendants. Appellant was subsequently charged with possession of methamphetamine with intent to deliver in an amount more than 4 but less than 200 grams.[2]

---

[1] A fourth officer joined in after the initial three officers entered the room.

[2] *See* TEX. HEALTH & SAFETY CODE § 481.115(d).

Appellant and one of the co-defendants filed motions to suppress the evidence obtained inside the hotel room.

## A.    Motion to Suppress Hearing

After hearing the testimony of Officer Duckworth and night manager Chapman,[3] the trial court denied Appellant's motion to suppress. The court made findings of fact and conclusions of law stating that: (1) the defendant had a diminished expectation of privacy in the room based on his eviction by hotel staff for hotel policy violations; (2) Chapman had a right to enter the room to facilitate the eviction, and Officer Duckworth also had a right to enter to assist Chapman in the eviction; (3) the contraband was found in plain view and allowed officers to lawfully arrest Appellant and his co-defendants; (4) narcotics discovered in the hotel room's trash can were found pursuant to a lawful search incident to arrest; (5) even if Appellant had a reasonable expectation of privacy in the hotel room, the officers had probable cause to believe a crime was being committed in the room based on the information relayed by hotel staff and that exigent circumstances existed to justify the warrantless entry; and (6) even if exigent circumstances did not exist to justify the entry, Appellant's co-defendant consented to Officer Duckworth's entry.[4] After the motion to suppress was denied, Appellant pled guilty and was sentenced to ten years' imprisonment.

## B.    Court of Appeals' Opinion

---

[3] These were the only two witnesses who testified at the motion to suppress hearing.

[4] Officer Duckworth's bodycam footage shows one of the guests saying "come on, come on in, man" to the officers. But at the motion to suppress hearing, Officer Duckworth admitted that he had already broken the threshold of the room before being invited in.

In reversing the trial court's denial of Appellant's motion to suppress, the court of appeals held that, without advanced notice of eviction, Appellant maintained a reasonable expectation of privacy in the hotel room and there were no exigent circumstances which justified the police officers' entry. *Tilghman v. State*, 576 S.W.3d 449, 462, 465 (Tex. App.—Austin 2019). It further held that the co-defendant's consent to entry was not voluntary. *Id.* at 467. In reaching its conclusion that Appellant maintained an expectation of privacy in the room at the time of the officers' entry, the court of appeals placed great emphasis on the following facts elicited at the motion to suppress hearing: (1) each hotel room contains a binder which includes Marriott's no-smoking policy; (2) the no-smoking policy provides that violators will be assessed a "fee" but says nothing about possible eviction; (3) Chapman testified that Marriott has a policy that prohibits illegal activity and requires violators to leave the premises, but Chapman was unaware of any rental agreement that describes that policy for guests; and (4) Chapman did not believe that any notice of eviction had been slid under the door of Room 123. The court also relied on the Supreme Court's decision in *Stoner v. California*, in which the Court held that a hotel guest has a reasonable expectation of privacy in his hotel room and that a hotel clerk may not consent to a search of the occupant's room at law enforcement's request. *Id*. at 459, 462 (citing 376 U.S. 483 (1964)). The court of appeals ultimately determined that because Appellant had no notice that he could be evicted under the no-smoking or illegal activity policies and had no advanced notice of the eviction before police arrived, he was not lawfully evicted and retained his expectation of privacy in the hotel room at the time police entered. *Id.* at 461-

62. Therefore, the court held that the warrantless entry by law enforcement violated Appellant's Fourth Amendment rights. *Id.* at 462.

Justice Kelly dissented. She concluded that police did not enter Appellant's room to search it as was the case in *Stoner*, but instead entered to assist the hotel with an eviction. *Tilghman*, 576 S.W.3d at 469 (Kelly, J., dissenting). She further noted that "Texas law does not require that a hotel guest be notified in advance that he could be evicted for committing illegal activity on hotel property," and that both parties agreed that at the time officers entered the hotel room, the hotel had the right to evict Appellant. *Id.* at 469, 471. In Justice Kelly's view, because the hotel had the right to evict Appellant for using drugs on the premises in violation of hotel policy, it was lawful for hotel staff to call the police to effectuate the eviction, including allowing police to enter Appellant's room. *Id.* at 470–71 (citing *Voelkel v. State*, 717 S.W.2d 314 (Tex. Crim. App. 1986)). She also pointed to federal cases upholding warrantless entries into hotel rooms by police in situations involving hotel-initiated evictions of guests. *Id.* (citing *United States v. Peoples*, 854 F.3d 993, 995 (8th Cir. 2017) (upholding police officer's warrantless entry into motel room after staff member handed him a key and asked him to evict guest; entry was lawful because it "was not a search but an eviction"); *United States v. Tolbert*, 613 F. App'x 548, 549 (7th Cir. 2015) (upholding officer's unaccompanied entry into a hotel room to evict an occupant for violating a hotel non-smoking and no-party policy; as soon as hotel staff authorized officers to evict the guests, the guests' "hotel tenancy—and accompanying expectation of privacy—was extinguished").[5] Justice Kelly concluded that, absent any Texas law

---

[5] Justice Kelly acknowledged that *Peoples* and *Tolbert* are distinguishable. In *Peoples*, the hotel eviction was expressly authorized by state statute. *Peoples*, 854 F.3d at 995. And in *Tolbert*, the

requiring that a guest "must be put on notice that they could be evicted for illegal activity," no such notice was required here. *Id.* at 471-72. Thus, Appellant was properly evicted by the police at the hotel staff's request and the resulting discovery of contraband was lawful. *Id.* at 472.

We granted the State's petition for discretionary review on a single ground to evaluate the court of appeals' analysis of this Fourth Amendment issue.[6]

## II.    Analysis

Agreeing in large part with Justice Kelly's dissent, we hold that, contrary to the court of appeals' conclusion, Appellant's expectation of privacy in the hotel room was extinguished once the hotel staff took affirmative steps to evict him on suspicion that he was using illegal drugs in his room in violation of hotel policy. Thus, the police officers' entry into his room at the request of hotel staff to facilitate the eviction was lawful. Because we conclude that the court of appeals erred in holding otherwise, we reverse.

### A.    Standard of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Lerma v. State*, 543 S.W.3d 184, 189–190 (Tex. Crim. App. 2018). We afford almost total deference to a trial court's determination of historical facts. *Id*. at 190. When a trial judge makes express findings of fact, an appellate court must examine the record in

hotel's policies allowing for eviction upon violation were provided to guests at check-in. 613 F. App'x at 549. But, she noted that these cases are more analogous to this case than *Stoner*, because *Stoner* did not involve an eviction; it involved police requesting the hotel's permission to search a suspect's hotel room. *Tilghman*, 576 S.W.3d at 471 (Kelly, J., dissenting).

[6] The State's ground for review states, "The Court of Appeals erred in holding that police could not lawfully enter a hotel room to help a hotel manager evict a guest engaging in criminal activity."

the light most favorable to the ruling and uphold those fact findings so long as they are supported by the record. *State v. Rodriguez*, 521 S.W.3d 1, 8 (Tex. Crim. App. 2017). We then apply a *de novo* standard of review to determine the legal significance of those facts. *Id.*

### B.     Fourth Amendment Principles

The U.S. Constitution's Fourth Amendment guarantees people the right "to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures[.]" U.S. CONST. AMEND. IV. This means that, subject to certain exceptions, law enforcement must obtain a search warrant before searching or seizing any place or thing in which a person has a reasonable expectation of privacy. *Kentucky v. King,* 563 U.S. 452, 459 (2011) ("Although the text of the Fourth Amendment does not specify when a search warrant must be obtained, this Court has inferred that a warrant must generally be secured."). A person always maintains a reasonable expectation of privacy in his or her home. *Kyllo v. United States*, 533 U.S. 31, 34, 40 (2001). This right has been extended to hotel guests in their rooms. *Stoner*, 376 U.S. at 490 ("No less than a tenant of a house . . . a guest in a hotel room is entitled to constitutional protection against unreasonable searches and seizures."); *Moberg v. State*, 810 S.W.2d 190, 194 (Tex. Crim. App. 1991). As such, hotel staff may not consent to a law enforcement search of an occupied room in which a guest retains an expectation of privacy. *Stoner*, 376 U.S. at 488. Hotel guests, however, lose that expectation of privacy in their room at the time their occupancy is scheduled to end or upon their eviction from the room by the hotel. *See, e.g.*, *Comm. v. Molina*, 948 N.E.2d 402, 408 (Mass. 2011) ("When a guest's hotel rental period has been lawfully terminated, the guest no longer has a legitimate expectation of privacy in the hotel room.");

*State v. Williams*, 881 N.W.2d 618, 624 (N.D. 2016) ("Once Williams was evicted, the hotel room reverted to the control of the hotel management, Williams no longer had a privacy interest in the hotel room, and the hotel manager could consent to the officers entering the room to remove Williams' belongings."); *United States v. Bautista*, 362 F.3d 584, 586 (9th Cir. 2004) (concluding that, because defendant "was not evicted from his motel room by the manager, he retained a legitimate expectation of privacy at the time of the warrantless entry by the police"); *United States v. Bass*, 41 F. App'x. 735, 737 (6th Cir. 2002) ("The hotel management had no authority to subvert Bass's exclusive right to consent to the search of his hotel room in the absence of any evidence that the hotel management had decided to evict him at the time of the search."). If hotel management needs assistance with carrying out an eviction of a hotel guest (for example, based on expiration of the occupancy period or for a violation of hotel policies), police are allowed to assist with facilitating the eviction, and that is not considered a violation of the person's Fourth Amendment rights. *See Voelkel v. State,* 717 S.W.2d 314, 315-16 (Tex. Crim. App. 1986) (concluding that motel guest who had stayed past checkout time and had been asked to leave by manager had "a substantially diminished expectation of privacy" in her room, such that officers who arrived and entered her room to "facilitate her eviction" did not "infringe upon appellant's Fourth Amendment expectation of privacy").

While the aforementioned principles are well-established, this case presents a novel question: At what point, under Texas law, does a person lose his reasonable expectation of privacy in a hotel room if the hotel decides to evict him for violating hotel policy? Our answer is that such loss of privacy interest occurs as soon as the hotel staff takes affirmative

steps to repossess the room. Thereafter, control of the hotel room reverts to the hotel, such that any entries by hotel staff or police to facilitate the eviction are lawful and do not amount to a violation of the person's Fourth Amendment rights.

### C. A hotel guest who violates hotel policy loses his expectation of privacy in his room when hotel staff takes affirmative steps to carry out an eviction; thus, actual advanced notice of eviction is not required.

Because we agree with much of the substance of Justice Kelly's dissenting opinion, we draw significantly from it in our analysis of this issue.

Under Texas law, there is no landlord-tenant relationship between a hotel and its guest. *Olley v. HVM, L.L.C.*, 449 S.W.3d 572, 575–76 (Tex. App.—Houston [14th Dist.] 2014) (citing *Bertuca v. Martinez*, No. 04–04–00926–CV, 2006 WL 397904, at *2 (Tex. App.—San Antonio Feb. 22, 2006, no pet.) (mem. op.)). Thus, an innkeeper has no duty to keep a guest indefinitely and has the right to evict a guest for any number of reasons. *McBride v. Hosey*, 197 S.W.2d 372, 374 (Tex. Civ. App.—El Paso 1946, writ ref'd n.r.e.) ("[W]hen a guest is obnoxious for some reason he may be forcibly removed and without resort to legal process, provided no more force is used than is necessary."). Moreover, as Justice Kelly noted, Texas has no statutory law requiring a specific procedure for evicting guests from hotels. *See Tilghman*, 576 S.W.3d at 471 (Kelly, J., dissenting). Given the lack of any statutory law on this issue, resolution of the instant question must be resolved by looking to the available case law.[7]

---

[7] We acknowledge here that the Property Code contains numerous provisions governing eviction in the context of a landlord-tenant relationship. *See, e.g.,* TEX. PROP. CODE §§ 24.001 *et seq.* (setting forth provisions regarding forcible detainer action to evict). However, because no landlord-tenant relationship exists between a hotel and its guest, such provisions are inapplicable in this context. *See Olley,* 449 S.W.3d at 575 ("A guest in a hotel is a mere licensee, not a tenant. . . . Accordingly, no landlord-tenant relationship exists between a hotel and its guest."); *Dass, Inc.*

As noted above, this Court has already held in *Voelkel* that a motel guest who stays past the agreed-upon occupancy period can be physically evicted with assistance from police officers at the request of motel staff. *Voelkel*, 717 S.W.2d at 315–16. In *Voelkel*, a motel guest stayed two hours past the scheduled checkout time after having previously been warned about unacceptable conduct during her stay (specifically, she parked a motorcycle inside her room). *Id.* at 315. When she failed to timely check out, the manager called police to assist in evicting her. *Id.* During the eviction, an officer stepped inside the room and observed drug evidence in plain view. *Id.* In holding that no Fourth Amendment violation had occurred, we reasoned that the defendant "had a substantially diminished expectation of privacy . . . by the time Officers Helm and Reed arrived to facilitate her eviction" because she had stayed two hours past checkout time after having been expressly reminded of the checkout time. *Id.* Because the manager "clearly had a right to enter the room," the officers who were "present at the invitation of [the manager] also had a right to enter the room." *Id.* at 315-16.

Although *Voelkel* is distinguishable because it involved a motel guest who had overstayed the rental period, it nevertheless guides our analysis here. If Appellant had a "substantially diminished" (or extinguished) expectation of privacy by the time of the officers' entry, then the hotel manager and officers had a right to enter the room and

---

*v. Smith*, 206 S.W.3d 197, 200 (Tex. App.—Dallas 2006, no pet.) ("A forcible detainer action is dependent on proof of a landlord-tenant relationship."); *McBride*, 197 S.W.2d at 374 (stating that forcible detainer action was "not applicable" in context of evicting hotel guest since "the relation of landlord and tenant does not exist because of the absence of a contract with respect to realty"). Thus, our use of the term "eviction" in this opinion refers to the common law understanding of that term—"[t]he act or process of legally dispossessing a person of land or rental property." Black's Law Dictionary (10th ed. 2014).

Appellant's Fourth Amendment rights were not violated. Because *Voelkel* does not address the circumstances under which a hotel guest may be evicted and thus loses his reasonable expectation of privacy during the rental period, and no other cases from this Court appear to address that issue, we look to other jurisdictions for guidance.

In her dissenting opinion, Justice Kelly focused on two federal court opinions: *Peoples*, 854 F.3d 993, and *Tolbert*, 613 F. App'x 548. In *Peoples*, a police officer alerted hotel staff that one of its guests was suspected of involvement in a car theft. 854 F.3d at 995. The hotel clerk then handed the officer a key to the room to evict the guest. *Id.* After knocking and receiving no response, the officer entered and saw contraband in plain view. *Id.* In upholding the police officer's conduct, the Eighth Circuit explained that the officer's entry was not a search but was an "eviction." *Id.* at 997. It explained, "[O]nce a guest has been justifiably expelled, the guest is without standing to contest an officer's entry into his hotel room on Fourth Amendment grounds . . . . [T]his is true because, upon eviction, the rental period terminates . . . [and] control over the hotel room revert[s] to management." *Id.* at 996 (citations omitted). Importantly, in *Peoples*, the defendant did not receive any actual notice that he was being evicted prior to the officer's entry into his room. Under those circumstances, the court effectively treated Peoples as having lost his reasonable expectation of privacy in the room immediately once the hotel staff took the action of handing the officer the room key to effectuate the eviction. Thus, the officer's entry at the request of the hotel was not a Fourth Amendment violation. The court's analysis supports the notion that actual notice is not required before a hotel utilizes police assistance for an eviction. It also supports the notion that immediately upon the hotel's taking of some action

to evict, a hotel guest's reasonable expectation of privacy in his room is diminished. But *Peoples* is also distinguishable from this case in at least one respect—the court noted in its opinion that a Missouri state statute expressly permitted eviction for those using a hotel for an unlawful purpose. *Id.* Because Texas does not have any such statutory law governing the circumstances under which a hotel can evict, *Peoples,* while persuasive, does not directly resolve the question before us.

In *Tolbert*, hotel staff called the police to assist with an eviction after receiving complaints about loud partying and smoking in a room. 613 F. App'x at 549–50. Before calling the police, hotel staff did not expressly warn the occupants that they were no longer welcome on the premises, but the written guest rental agreement did include a policy against parties and smoking in rooms and warned guests that violations would result in immediate eviction. *Id.* at 549. When police arrived, hotel staff handed a key to the officers, who went to the room, knocked, and upon receiving no reply, entered the room. *Id.* In upholding the officers' entry under a "clear error" standard, the circuit court agreed with the district court's determination that the defendant "had been evicted . . . as soon as [hotel staff] instructed the police to kick out the room's occupants." *Id.* at 550–51. The court reasoned that a violation of the hotel's policies would subject guests to "immediate eviction." *Id.* at 551. Thus, as soon as hotel staff authorized the police to enter the room to effectuate the eviction, the defendant's "hotel tenancy—and accompanying expectation of privacy—was extinguished." *Id.* Again, in *Tolbert*, the defendant did not receive any express notice that he was being evicted prior to entry by the police. But he did receive a

written rental agreement apprising him of the hotel's policy. Given this distinction, *Tolbert,* like *Peoples*, is persuasive but not on all fours with the instant case.

Does the lack of a Texas statute expressly authorizing eviction or a written rental agreement stating that violations of hotel policy will result in eviction justify a different outcome in this case such that suppression of the evidence is required? We conclude that the answer is no. While such factors were cited by the courts in *Peoples* and *Tolbert* in support of their Fourth Amendment analyses, that does not signal a requirement that these factors be present before a hotel is authorized to immediately evict a hotel guest without notice upon suspicion that the guest has violated a hotel policy. In fact, even in situations where there is no applicable statutory law governing evictions and where the hotel itself does not have a specific written eviction policy that is conveyed to its guests, several courts have held that control of a hotel room reverts to the hotel, and a guest loses his reasonable expectation of privacy therein, immediately upon the hotel's taking of "affirmative steps to repossess the room." *United States v. Cunag*, 386 F.3d 888, 895 (9th Cir. 2004) (upholding police officer's entry into a hotel room after the manager took "justifiable affirmative steps to repossess [the room] and to assert dominion and control over it" by locking the occupants out and calling the police to report a crime and assist with an eviction); *see also Bautista*, 362 F.3d at 590 (holding eviction occurs once management has "justifiably terminated [guest's] control of the room through private acts of dominion"). These cases do not require actual notice to the occupants that they are being evicted before allowing law enforcement's entry into the room to effectuate such eviction. Rather, they indicate that a guest loses his right to occupy the premises immediately upon the hotel staff

taking some type of action to repossess the room in response to a policy violation, thereby resulting in the immediate loss of the guest's expectation of privacy.

The approach taken by the Eighth Circuit Court of Appeals in *United States v. Molsbarger*, 551 F.3d 809 (8th Cir. 2009), is particularly persuasive. There, hotel managers responded to several noise complaints and suspected drug use in a room by calling police and requesting assistance in evicting the guests. No notice was provided to the guests that they had violated hotel policy and were being evicted. When the police arrived, they knocked on the guests' door, announced who they were and that hotel management wanted them to leave, but were refused entry by those in the room. *Id*. at 810. One of the officers reiterated that the hotel was evicting them and then entered the room. *Id.* Upon entry, the officer recognized one of the occupants as someone with an outstanding warrant. He handcuffed the occupant, conducted a search of his person incident to his arrest, and found on or near his person narcotics, drug paraphernalia, and $940 in cash. *Id.* at 810–811. In upholding the police officer's conduct, the Eighth Circuit reasoned that "justifiable eviction terminates a hotel occupant's reasonable expectation of privacy in the room." *Id.* at 811. It continued, "Disruptive, unauthorized conduct in a hotel room invites intervention from management and termination of the rental agreement. Thus, an individual cannot assert an expectation of being free from police intrusion upon his solitude and privacy in a place from which he has been justifiably expelled." *Id.* (citations omitted). Applying these principles, the court stated,

> Molsbarger and the other occupants of the room were creating a public disturbance that prompted several complaints from other hotel occupants about the noise level in the room. Notwithstanding the manager's warning that they quiet down, the occupants of Room 101 continued their raucous

behavior. When the police arrived, the manager confirmed that he wanted the occupants evicted. The police justifiably entered the room to assist the manager in expelling the individuals in an orderly fashion. Any right Molsbarger had to be free of government intrusion into the room *ended when the hotel manager, properly exercising his authority, decided to evict the unruly guests and asked the police to help him do so.*

*Id.* at 811–12 (emphasis added).

We find this reasoning persuasive. A hotel has a right to evict a guest immediately, without actual notice, if the guest engages in behavior that violates the hotel's policies. And the hotel has the right to call the police for assistance with the eviction. To hold otherwise would potentially place hotel staff at risk of unreasonable harm by requiring them to attempt a physical eviction without police assistance. Although we recognize that hotel guests generally have an expectation of privacy in their hotel rooms, a guest who is engaging in behavior that he reasonably should know is in violation of hotel policy, even if that policy is not provided to him in writing, should also reasonably know that he may be evicted for engaging in such prohibited conduct once the hotel staff becomes aware of it. Such an individual can no longer contend that he maintains an objectively reasonable expectation of privacy in the room. (And this is particularly true where the prohibited conduct is of such a nature that hotel staff is very likely to discover it, such as the rowdy behavior at issue in *Molsbarger*, or the use of marijuana resulting in smoke seeping into the common hallway area of the hotel, as in this case). Therefore, subsequent entries into the room by hotel staff or police at the request of hotel staff to evict such a person do not violate his Fourth Amendment rights.

Accordingly, we hold that upon hotel staff taking affirmative steps to evict a guest, control of the hotel room reverts to the hotel, and the guest loses his reasonable expectation

of privacy therein. *See id.*; *see also Cunag*, 386 F.3d at 895. At that point, because the guest has lost his reasonable expectation of privacy, the hotel staff has the authority to enter the room and may also invite the police to enter to assist in the eviction. *Voelkel*, 717 S.W.2d at 315–16.[8] If, as a matter of policy, notice should be required before evicting hotel guests, that is a job for the Legislature. Our only role in this context is to evaluate what is reasonable under the Fourth Amendment. *See Valtierra v. State*, 310 S.W.3d 442, 448 (Tex. Crim. App. 2010) ("The touchstone of the Fourth Amendment is reasonableness.").

Here, the hotel staff took affirmative steps to evict the occupants of Room 123 by initially knocking on the door and, when no one replied, manager Chapman called the police to assist in an eviction. Because control of the hotel room reverted to the hotel immediately upon the hotel taking affirmative actions to evict the occupants, Appellant no longer had an expectation of privacy in the hotel room by the time of the police officers' entry. Thus, the officers' entry did not infringe upon his Fourth Amendment rights.

## III. Conclusion

Appellant's expectation of privacy in his hotel room was extinguished by the hotel staff's taking of affirmative steps to evict him based on his violation of the hotel's policy

---

[8] Appellant and the court of appeals have both expressed concern that not requiring notice before eviction will put hotel guests at risk of arbitrary evictions and effectively rid them of an expectation of privacy in their hotel rooms. We note here, however, that the hotel's decision to evict was anything but arbitrary—multiple hotel staff smelled marijuana smoke, and we have no reason to believe that the hotel staff were motivated by anything other than a desire to enforce hotel policy. Moreover, hotel staff knocked on the door to attempt eviction, but the occupants did not respond. Thus, we need not address in the instant case whether a truly arbitrary or entirely unforeseeable eviction would require a different result. Moreover, in the age of social media and widespread posting of reviews, it seems unlikely to us that hotels would frequently engage in arbitrary evictions. A business that frequently evicts paying customers without cause will not stay open long.

against illegal activity. Therefore, the police officers' entry to effectuate the eviction did not violate Appellant's Fourth Amendment rights. The judgment of the court of appeals is reversed and the trial court's judgment of conviction is affirmed.


DELIVERED: June 23, 2021
PUBLISH