

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0676-19

### MICHAEL JOSEPH TILGHMAN, Appellant

### v.

### THE STATE OF TEXAS

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE THIRD COURT OF APPEALS
### HAYS COUNTY

**McCLURE, J.,** filed a concurring opinion.

## O P I N I O N

Today the Court holds a hotel has a right to evict a guest, without advance notice, if the guest engages in behavior that violates the hotel's policies, and that the hotel has the right to call the police for assistance with the eviction. The Court has therefore decided that a hotel manager's instant eviction of a hotel guest immediately terminates a guest's reasonable expectation of privacy. It arrives at this decision by

looking at federal case law, and the case law of several of our sister states. Today's holding is consistent with other jurisdictions that have considered this issue, as well as consistent with the right of a property owner, absent a landlord-tenant relationship, to control under what circumstances a guest may stay on property. And yet I write separately to express my concern that under this eviction theory, there is a danger that a hotel manager could simply show up with police, immediately extinguish any privacy interest that a guest has in their room via eviction, and allow police to search a room without regard for the Fourth Amendment. Without direction from the Legislature as to specific eviction and notice requirements involving hotel guests, however, I reluctantly concur with the majority that in this case, hotel management lawfully evicted Appellant, which terminated his expectation of privacy in the room, without prior notice.

The circumstances surrounding the eviction and subsequent arrest of the occupants of Room 123 of the Marriott Fairfield Inn on October 14, 2016, were captured on Officer Daniel Duckworth's body-worn camera. The San Marcos Police Department received a phone call from one of the hotel's managers asking assistance in evicting the occupants of Room 123 "for having drugs in the room." After the officers arrived, they accompanied the hotel manager to Room 123. The officers knocked on the door repeatedly, announced that they were with the San Marcos Police Department, and proceeded to open the door.

As seen on the body-worn camera footage, two occupants, Bo Zimmerhanzel and Michael Joseph Tilghman (the Appellant), can be seen standing near the door, with Zimmerhanzel appearing surprised. One of the officers tells the occupants, "How's it going? San Marcos Police Department. What's going on, guys?" Zimmerhanzel, who is standing partly inside the bathroom, responds, "Nothing. Goddamn. What's going on here?" An officer replies, "Hey, let me see your other hand." Zimmerhanzel complies by stepping outside the bathroom and showing the officers both of his hands. He then tells the officers, "Oh, I'm sorry. Damn, what the hell's going on?"

One of the officers announces, "Here's the deal. Y'all, it's time for y'all to leave." Zimmerhanzel asks, "What did we do?" The officer replies, "You are no longer welcome guests of this hotel." Zimmerhanzel again asks, "What did we do, sir? Damn."

One of the officers asks if there are only two men in the room and Zimmerhanzel points at the bathroom and indicates that another person is inside. Travis Ward then emerges from the bathroom, holding a disposable shaving razor, and tells the officers, "Sorry, I'm shaving."

Zimmerhanzel again asks, "What, what's the problem here?" Officer Duckworth then gestures his hand toward the door, telling the other officers to "go in, make sure." Officer Smith then enters the room, with another officer following

closely behind him. As Smith is walking past the door, Zimmerhanzel then says, "Come on, come on in, man." All of this occurs within 30 seconds of the officers opening the door.

After the officers had entered the room, the three officers "stood around . . . in different areas and then we just told them to collect their belongings and essentially stood there until we started observing narcotics in plain view." This evidence included "a glass container containing marihuana on the nightstand in between the two beds" and, in the drawer to the nightstand, "a small, clear plastic bag containing a white crystalline substance" that Duckworth recognized as methamphetamine. After detaining the men, the officers "searched the areas immediately around them" and found additional narcotics in the trash can, specifically "another plastic bag containing many smaller, clearer plastic bags containing methamphetamine."

The majority opinion holds that Appellant was evicted when the hotel staff took affirmative steps to evict the occupants of Room 123 when the hotel manager (1) initially knocked on the door, and (2) called the police to assist in an eviction. It is at this moment, according to the majority, that Appellant's expectation of privacy in the hotel room was extinguished.

While I agree that a hotel's lawful eviction of a guest from his room may terminate a guest's legitimate expectation of privacy, I would prefer that

the guest being evicted have knowledge of the eviction before it occurs, or at a minimum, before the police conduct a search of the room. Such a knowledge requirement would be somewhat analogous, in my mind, to the notice requirement in the criminal trespass statute. A prosecution for criminal trespass requires that the State prove that Appellant had "notice" that he may no longer remain on or in property of another as defined by Section 30.05(b)(2). "Notice" means: (A) oral or written communication by the owner or someone with apparent authority to act for the owner; (B) fencing or other enclosure obviously designed to exclude intruders or to contain livestock; (C) a sign or signs posted on the property or at the entrance to the building, reasonably likely to come to the attention of intruders, indicating that entry is forbidden. TEX. PENAL CODE § 30.05(b)(2).

In this case, the record before us is void of any evidence that Appellant had "notice" of an eviction. According to the record, hotel staff knocked on Appellant's door to alert him that he was being evicted but Appellant did not come to the door or answer those attempts.[1] But unlike the criminal trespass statute, notice is not a requirement in a hotel eviction. In fact, Texas law allows eviction from a hotel without legal process. *McBride v. Hosey*, 197 S.W.2d 372, 375 (El Paso, 1946, writ

---

[1] The night manager testified at the suppression hearing that prior to his arrival at the hotel that night, another manager or hotel employee had knocked on the door of the room "[t]o get [the occupants] to leave" but that "nobody answered" and that "another gentleman said that they were gone."

ref'd n.r.e). Ideally, hotels would have eviction policies, give them to guests, and provide notice before an eviction. But none of these requirements exist in Texas law, and I am not suggesting that this Court judicially create hotel eviction notice requirements. This type of law-making is left to the Legislature.

Do people have an expectation of privacy in a hotel? Yes, but it's limited. The Fourth Amendment protects people, not places. *Katz v. United States*, 389 U.S. 347, 351 (1967). A guest in a hotel room is protected against unreasonable searches and seizures, and the general requirement for a search warrant is not suspended merely because of the guest status of the occupant of the room. *Stoner v. California*, 376 U.S 483, 490 (1964). The United States Supreme Court has held that hotel guests are "people" entitled to this protection "[n]o less than a tenant of a house, or the occupant of a room in a boarding house, a guest in a hotel room is entitled to constitutional protection against unreasonable searches and seizures" and that this "protection would disappear if it were left to depend upon the unfettered discretion of an employee of the hotel." *Stoner*, 376 U.S. at 490. The Court added, "It is important to bear in mind that it was the petitioner's constitutional right which was at stake here, and not the night clerk's nor the hotel's. It was a right, therefore, which only the petitioner could waive by word or deed, either directly or through an agent." *Id.* at 489.

Given this framework, it seems that the intermediate court is correct that a Fourth Amendment violation occurred at the moment officers opened the door and were able to enter and see what was inside. This is because, as the Supreme Court held in *Stoner*, it is the rights of the occupant of the room are what is at stake, not the apparent authority of the hotel employee. On the other hand, I find no error in this Court's opinion in that hotel management was within their rights to evict Appellant; indeed, the police may assist with eviction when asked by hotel staff; and a hotel manager is not prohibited from entering the room. *See Voelkel v. State,* 717 S.W.2d 314, 315 (Tex. Crim. App. 1986).

While I realize that this was a highly fluid situation with no obvious solution, I do not like the officers' warrantless entry into the room. It would have been better (and this case would not be before us) if the officers had waited in the hallway or obtained consent to enter the room prior to doing so. Yet here we are. Under the Court's holding, there is a danger that a hotel manager can simply show up with police and immediately extinguish any privacy interest that a guest has in their room. Then police could search the room without regard for the Fourth Amendment. The action of the hotel clerk would make the search of a hotel room lawful, which is the result the Supreme Court cautioned against in *Stoner*. *See Stoner*, 376 U.S. at 487-88.

I also take issue with this Court's holding that Appellant's expectation of privacy in the hotel room extinguished when hotel staff took "affirmative steps" to evict the occupants of Room 123. A hotel guest's knowledge of an eviction, which would terminate any privacy rights, is critical to the protections offered by the Fourth Amendment. A person's belief or understanding cannot be terminated without one's knowledge. Therefore, it logically follows that a hotel guest has an expectation of privacy in the room he is occupying that cannot be terminated without the guest's knowledge.

This is not what happened in this case. The facts show that the occupants of Room 123 were not aware of the eviction until the moment they were asked by the officers to leave. It was at this moment, and no sooner, that the occupant's reasonable expectation of privacy began to erode. But, as evidenced by the body-cam recording, police officers entered the room without Appellant's consent. At the time the police entered, Appellant was simultaneously being evicted and losing his expectation of privacy in the room.

I would prefer that any hotel guest, even one who was previously engaging[2] in misconduct in his room, maintain his expectation of privacy in that room unless

---

[2] I am by no means implying that during every police-assisted eviction, the police should stand outside a room, particularly if a valid warrant exception exists. However, that was not the situation here. The day manager had smelled marijuana earlier in the day, but there was no evidence that the night manager or the officers smelled marijuana outside Room 123.

and until the hotel notifies him that he has been or is being evicted, and has been given a reasonable amount of time to vacate the premises, and law enforcement would be able to provide a reasonable amount of assistance to hotel management to effectuate the eviction. Applying this standard to the facts of this case, once Appellant was told by the manager that he was evicted, Appellant should have been given a reasonable amount of time to gather his belongings and leave before the police entered the room without the guest's permission, without a warrant, or without an exception to the warrant requirement. This would allow an evicted hotel guest to retain a reasonable, but steadily dwindling, expectation of privacy, and prevent the police from entering the room unless the guest resists eviction. Because Appellant had not lost his legitimate expectation of privacy in Room 123 at the time the police, at the invitation of the hotel, entered and searched the room, that search would be unreasonable, and the evidence seized would be suppressed.

The court of appeals raised the concern that allowing for "instant" evictions may be abused by police agencies to get around the requirement to get a search warrant. The majority seeks to allay that concern by pointing out that hotels acting in such a way would risk bad reviews online and customer complaints. I note that the hotel in this case is a Marriott property – a hotel typically used by business and leisure guests staying for a relatively short amount of time (less that a week; often no more than a couple of nights). While getting a bad review on Yelp may be a

concern for a Marriott hotel owner, some hotels might be resistant to these concerns, such as "extended stay" hotels that operate much more like apartments without leases creating landlord-tenant relationships. Many of these properties are used by people as transitional housing over the course of weeks and months, and many such properties are used for illegal activity ranging from prostitution to narcotics sales. It is at this type of property that abuses of instant evictions are more likely to occur. There is now a risk that someone residing at such a hotel for several months could be instantly evicted and subjected to an invasive search without a warrant based on mere suspicion, or even nefarious motives by hotel management. Hence my belief that ideally, a hotel guest should have reasonable time to gather belongings and leave upon eviction. Until and unless the Legislature intervenes, this risk will persist.

In conclusion, I do not like the contemporaneous eviction and termination of expectation of privacy that occurred in this case. Yet I agree that hotel management was within their rights to evict Appellant. Without direction from the Legislature as to the type of notice required for the eviction of hotel guests, I reluctantly concur with the majority's holding that hotel management can evict guests and terminate their expectation of privacy in the room at any time, with no prior notice required.

Filed: June 23, 2021

PUBLISH